**Charles SUMRALL et al., Plaintiffs,**

v.

**T. E. MERCER TRUCKING COMPANY, Defendant.**

**Civ. A. No. 10751.**

United States District Court
S. D. Texas,
Houston Division.

Aug. 11, 1958.

Kirchheimer & Kirchheimer, Houston, Tex. (Joseph Kirchheimer, Houston, Tex.), for plaintiffs.

Rawlings, Sayers, Scurlock & Eidson, Allen P. Schoolfield, Jr., Fort Worth, Tex., and Butler, Binion, Rice & Cook, Houston, Tex. (Charles C. Crenshaw, Houston, Tex.), for defendant.

CONNALLY, District Judge.

The several plaintiffs here are former employees of the defendant, who seek to recover compensation allegedly due them for unpaid overtime worked during the term of their employment, as provided by the Fair Labor Standards Act.[1]

The defense is that the plaintiffs are employees concerning whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service, as provided by § 204 of the Motor Carrier Act,[2] in which event such employees are exempt from the provisions of the Fair Labor Standards Act as to overtime compensation by terms of § 13(b) (1) thereof.

The defendant operates a so-called "pipe yard" in connection with its trucking business. Oil field pipe of various sizes, lengths and weights is received by the defendant and stored for the account of the customer and owner of the pipe. On the order of the owner, the defendant transports and delivers the quantity of pipe desired. Much of the defendant's transportation business is of an interstate nature.

The pipe is received at the defendant's yard primarily by barge, but to a lesser extent by rail. It is unloaded and stacked. When an order is received from the owner for a quantity of his pipe thus stored by the defendant, a "line-haul" truck is loaded and dispatched. The plaintiffs here were engaged, in part, in various operations connected with the loading of such trucks, and composed the loading or "gin truck" crews as hereafter described.

The question presented is whether these individuals in fact are "loaders", as that term is used and defined by the Interstate Commerce Commission in describing those individuals for whom it may establish qualifications and maximum hours of service.[3] To answer this question calls for a determination of whether the individuals concerned, in the performance of their duties, directly affect the safety of operation of the vehicle in question upon the highway.

The work of loading the "line-haul" trucks is performed by a crew of four— one "kicker", two "hookers" and a "gin truck operator". The kicker has the job of rolling the joints of pipe from their position on the stack to a point, where they are accessible to the hookers. With one hooker on each end of the joint of pipe, a hook is placed in each end, whereupon, by the use of a winch and gin pole, the truck operator lifts the joint of pipe into the air and swings it toward the truck to be loaded. The hookers guide the pipe to its proper place upon the truck by means of ropes attached to the hook in each end, and it is gently dropped in place by the gin truck operator. The hooks are withdrawn, and the process repeated with another joint. This process is clearly illustrated by the several photo-

---

1. Title 29 U.S.C.A. §§ 201–219.

2. Title 49 U.S.C.A. § 304.

3. 28 M.C.C. 125, ex parte, Nos. M.C.–2 and M.C.–3; and see Levinson v. Spector Motor Service, 330 U.S. 649, at page 669, 67 S.Ct. 931, 91 L.Ed. 1158; and Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695, 67 S.Ct. 954, 91 L.Ed. 1184.

graphs received in evidence, to which reference is here made.

The joints of pipe are placed upon two bolsters of the truck-trailer which is being loaded. The several joints which will compose the bottom layer of the load are placed side by side. They are retained in place, and prevented from rolling outward, by metal pins set in the proper of several available holes provided for that purpose in the bolsters. With the first layer of pipe resting snugly and securely side by side, and chocked in place by the retaining pins, additional layers of pipe are pyramided one upon the other. Finally, the load is "boomed down" by placing a heavy chain around the waist of the load, which is tightened by a mechanical device, thus holding the several joints tightly bound together.

During the course of the loading operation, frequently a "pusher" or "checker" is present to assure that the correct pipe is loaded, and to oversee the loading operation. The plaintiffs in this action are not this type of employee.

Similarly, I find that it is the practice, with some exception, for the truck driver to be present during the loading operation. He also supervises the loading, and from time to time instructs the crew as to where the retaining pins should be placed, how far forward a particular joint of pipe should be placed, etc. The driver is not present, however, through a sense of duty or responsibility to the employer, but is present to supervise the loading for his own protection and safety. It is recognized by all concerned that an improperly loaded pipe truck is exceedingly dangerous, by reason of the size and weight of this character of pipe.

There have been many cases wherein different aspects of the operation of loading trucks have been considered, and the effort made to determine whether the duties of the particular class of employee there in issue directly affected the safety of the loaded vehicle upon the highway.[4] These cases are not entirely consistent, and are not of great benefit, because the nature of the employment varies so greatly from employer to employer.

On behalf of the plaintiffs, the point is made that these individuals did little more than manual labor. It is apparent from their testimony and appearance on the witness stand that, in large part, they are not highly skilled or technically trained employees. Most of them are itinerant workers, going from one pipe yard to another, and remaining for a matter of a few weeks or months with each employer before moving on to the next. Likewise, on behalf of the plaintiffs it is argued that what these individuals did was supervised and controlled by others, namely the pusher and/or the truck driver, and that they exercised no judgment or discretion in the performance of their duties.

On the other hand, it is urged by the defendant that these individuals actually performed the loading operation; they placed the cargo upon the truck, and it is heavy and potentially dangerous cargo. It is correctly pointed out that these men in working in the various pipe yards attain a certain facility and skill in the lifting, swinging and placing of the joints of pipe. Further, for the defendant, the point is made that the evidence shows that while in the great majority of the time the pusher or the truck driver may be present during the loading, it is not an infrequent occurrence for the crew of four to load the truck alone. In that event, the driver may make a hasty examination of the load and be on his way.

After an inquiry and investigation, the Wage and Hour Division of the U. S. Department of Labor concluded that employees doing this class of work all were "loaders", and exempt under § 13(b) (1).

In my judgment, the hookers and gin truck operators fall within the exemp-

4. McKeown v. Southern California Freight Forwarders, D.C., 49 F.Supp. 543; Crean v. M. Moran Transp. Lines, D.C., 50 F. Supp. 107; D.C., 54 F.Supp. 765; D.C., 57 F.Supp. 212; Walling v. Silver Fleet Motor Express, D.C., 67 F.Supp. 846; Gordon's Transports, Inc. v. Walling, 6 Cir., 162 F.2d 203; Foremost Dairies, Inc. v. Ivy, 5 Cir., 204 F.2d 186.

tion. The kickers do not. The kicker does no more than place the cargo in an accessible spot; and while he works in close contact with his crew members, his duties in no sense affect the safety of the truck upon the highway. The contrary is true for the two other types of employees. The loading task is their primary responsibility. If a pin is improperly placed, or if a heavy joint of pipe is improperly aligned, their mistake may have disastrous results. I do not consider the fact that their work usually is supervised, or later inspected, to remove such individuals from the jurisdiction of the Interstate Commerce Commission.

It was the practice in the defendant's yard for the unskilled employee to start as a kicker; and after a short period of training and observation thereafter to work as a hooker. Several of those here concerned, after a great deal more experience, served as gin truck operators. The hookers and kickers frequently changed positions from hour to hour. While these crews were used for other purposes in the yard (unloading railroad cars, stacking pipe, etc.), the loading of the outgoing "line-haul" trucks consumed a considerable part of their time, and constituted a substantial part of their duties.

I find that all of the parties plaintiff, during the period of time in controversy, served either as hookers or as gin truck operators at frequent intervals; that their activities in this line of employment directly affected safety of operation of the trucks involved upon the highway, by reason of which they are excluded from the overtime provisions of the Fair Labor Standards Act, and they are not entitled to recover the overtime compensation herein sought.

While other questions are raised in the briefs, it is not necessary that they be considered in view of the disposition thus made of the case.

The foregoing is adopted as Findings of Fact and Conclusions of Law.

Clerk will notify counsel.