James P. MITCHELL, Secretary of Labor,
United States Department of Labor,
Plaintiff,

v.

OVERNITE TRANSPORTATION COM-
PANY, Incorporated, Defendant.

No. C-23-G-58.

United States District Court
M. D. North Carolina,
Greensboro Division.

Sept. 10, 1959.

Stuart Rothman, Sol., U. S. Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Atty. U. S. Dept. of Labor, Birmingham, Ala., M. J. Parmenter, Atlanta, Ga., and Edwin G. Salyers, Birmingham, Ala., Attys., U. S. Dept. of Labor, for plaintiff.

Blakeney, Alexander & Machen and Ernest W. Machen, Jr., Charlotte, N. C., for defendant.

STANLEY, District Judge.

The plaintiff, James P. Mitchell, Secretary of Labor, United States Department of Labor, brings this action to enjoin the defendant, Overnite Transportation Company, Incorporated, from violating the overtime and record keeping provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq.

The defendant admits that its employees are engaged in commerce within the meaning of the Fair Labor Standards Act, but asserts that the employees involved are employees with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service, and are thus exempt from the overtime provisions and the record keeping requirements of said Act. The defendant further asserts that if it has failed to keep records in accordance with the requirements of said Act, which it denies, such failure has been unintentional.

The case was tried by the court without a jury. The proposed findings of fact and conclusions of law and briefs of the parties having been received, the court, after considering the pleadings, evidence, and briefs of the parties, now makes and files herein its Findings of Fact and Conclusions of Law, separately stated.

Findings of Fact

1. The plaintiff, James P. Mitchell, Secretary of Labor, United States Department of Labor, brings this action to enjoin the defendant from violating the provisions of Sections 15(a)(2) and 15 (a)(5) of the Fair Labor Standards Act, Title 29 U.S.C.A. § 215(a)(2, 5).

2. The Overnite Transportation Company, Incorporated, is a corporation licensed to do business in the State of North Carolina and is engaged in the transportation of freight by motor carrier under authority of a certificate issued by the Interstate Commerce Commission. At all times pertinent, the defendant has maintained a freight terminal at Greensboro, North Carolina, within the jurisdiction of this court, where it employs a number of employees in connection with the receiving, shipping, handling, moving, loading, unloading and transportation of freight, substantial portions of which are received from and shipped to points outside of North Carolina.

3. In connection with the operation of its Greensboro terminal, the defendant operates a number of trucks of various kinds, and employs various clerical personnel, mechanics, callers, loaders, checkers, stackers and warehousemen. All of the personnel at the Greensboro terminal are engaged in commerce within

the meaning of the Fair Labor Standards Act.

4. This action is concerned with the activities of four of the defendant's employees, namely, Claud Boles, T. T. Barbour, Nathaniel C. Emerson and Luke Tucker. The employees Boles, Barbour and Emerson are designated as freight callers, and the employee Tucker is designated as a freight checker. None of these employees have been paid in accordance with the overtime provisions of the Fair Labor Standards Act.

5. The primary duties of the three callers, namely, Boles, Barbour and Emerson, are to receive and unload freight from inbound trucks. When trailers arrive at the defendant's terminal, the freight callers board the trailers, unload the freight and place same on pallets for ease in handling. The freight is then moved by means of a fork lift to either the warehouse area or the appropriate outbound trailer. Aside from their primary duties of unloading, these callers are required to do some loading and stacking of freight in outbound trailers. While the evidence is conflicting and far from satisfactory with respect to the amount of time spent in loading and stacking freight in outbound trailers, it fairly appears from the plaintiff's own evidence that each of the callers in question spends several hours each week in the performance of these activities, and that the loading and stacking done by such employees constitute a normal and regular part of their duties.

6. Freight received at the defendant's Greensboro terminal regularly consists of mixed freight, some heavy and some light, including such items as drums of paint, acids and chemicals, steel bars, rugs and furniture, rolls of cable, and large bales of textile goods.

7. The larger items of freight, such as drums of paint and bales of textile goods, are normally placed on outgoing trailers by means of a fork lift. The smaller items are normally carried into the trailers by fork lifts after they have been stacked on a pallet designed for such purpose. The larger items of freight are normally placed on outbound trailers in the ultimate position for travel, no other positioning being required. Frequently, from ten to fifteen trailers are in the process of being loaded at one time.

8. Normally, outgoing freight is loaded and stacked by personnel known as freight stackers. These employees have the primary responsibility for positioning or stacking freight in trailers so as to balance the load and promote the safety of the operation of the tractor-trailer on the highway as it moves in interstate commerce. However, the number of stackers on duty at any one time never exceeds four or five. During peak periods, the freight callers in question are required to and do assist in the loading and stacking of freight on outbound trailers. This activity normally and regularly consists of loading and stacking mixed freight, some heavy and some light. In placing this freight, the callers exercise their own judgment and discretion in placing and distributing the items they load, taking into consideration the proper distribution of weight throughout the trailer body.

9. The manner in which heavy items of freight are loaded by the callers has a direct and substantial effect upon the safety of the operation of the defendant's tractor-trailers on the highway.

10. The callers in question have been trained in the manner of safe loading of freight, and they, in the normal and regular course of their loading and stacking activities, exercise their own judgment and discretion in placing and distributing the items they load, without the necessity of constant supervision of other employees.

11. The flow of incoming and outbound freight at the defendant's Greensboro terminal is controlled by the employee Tucker, who is designated as a freight checker. This employee is stationed at a control booth on one end of the defendant's terminal.

12. After freight has been unloaded from inbound trailers, the checker is

notified by means of an inter-communication system of the type, quantity and ultimate destination of the freight received, and he in turn directs the proper disposition of such freight, either to an outbound trailer or to the warehouse.

13. The record clearly establishes that the primary duty of the defendant's freight checker is to expedite the flow of freight into, through and from the Greensboro terminal. His duties in directing the flow of freight have a bearing upon the order in which freight is delivered to outbound trailers, but he does not plan the load in advance. Neither does he exercise any control or discretion over the actual loading of the trailers. While the freight checker is stationed in the control booth in the performance of his duties, he is seldom able to see and observe the truck-trailers and the actual loading operations as they are in progress. His sole concern is the expeditious handling of freight rather than the safe loading of trailers. While it appears that the freight checker has some responsibility to warn employees handling dangerous items, such as acids, inflammable liquids and the like, to exercise caution, and to instruct these employees to label the items with the appropriate tags calling attention to their dangerous nature, this function relates to warehouse safety or the safety of defendant's personnel and freight, and does not have any direct bearing upon the safe loading of trailers.

14. Upon rare occasions, the freight checker, in the absence of the dock foreman, supervises the stacking of freight in outgoing trailers. However, such activity is trivial as compared with his principal duties as a freight checker.

15. With respect to its freight checker, the records of the defendant disclose that he is compensated on the basis of a weekly salary, and show no regular hourly rate of pay. With respect to all of the employees involved in this action, the records of the defendant fail to show a breakdown between straight-time earnings or wages and overtime compensation earned each work week.

16. In September of 1950, the defendant's Greensboro terminal was inspected by a representative of the Wage and Hour Division of the North Carolina Department of Labor. This investigation disclosed violations of the Fair Labor Standards Act, and the violations were discussed with the manager of the Greensboro terminal. Following this investigation, letters describing the violations were sent by the North Carolina Commissioner of Labor to the defendant's home office in Richmond, Virginia. In 1956, the Greensboro terminal was again investigated by a representative of the North Carolina State Department of Labor and violations were again disclosed and discussed with the terminal manager. During the same year, and following an investigation of a number of the defendant's terminals, a conference was held at the defendant's home office in Richmond, Virginia, by a representative of the Wage and Hour Division of the United States Department of Labor for the purpose of discussing with the defendant's vice-president, Mr. W. P. Hackett, the results of these investigations at the defendant's terminals, including the Greensboro terminal. Shortly after the conference, and on or about November 6, 1956, Mr. W. P. Hackett directed a letter to a representative of the United States Department of Labor in which future compliance with the act was promised. In the meantime, Mr. Hackett had directed a communication to all of his terminal agents enclosing certain bulletins and regulations issued by the United States Department of Labor and insisted upon strict compliance with the Fair Labor Standards Act. So far as the record discloses, the defendant did take corrective measures with reference to all of its employees except the four involved in this litigation.

## Discussion

The determination of this action depends upon the proper construction and application of the following statutes:

Title 29 U.S.C.A. § 207(a)

"Except as otherwise provided in this section, no employer shall employ any of his employees who is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Title 29 U.S.C.A. § 211(c)

"Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder."

Title 29 U.S.C.A. § 213(b) (1).

"The provisions of section 207 of this title shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49; * * *."

Title 49 U.S.C.A. § 304(a)(1)

"It shall be the duty of the Commission (1) To regulate common carriers by motor vehicle as provided in this chapter, and to that end the Commission may establish reasonable requirements with respect to continuous and adequate service, transportation of baggage and express, uniform systems of accounts, records, and reports, preservation of records, qualifications and maximum hours of service of employees, and safety of operation and equipment."

The plaintiff contends that the four employees in question are covered by the overtime and record keeping requirements of the Fair Labor Standards Act, Title 29 U.S.C.A. §§ 207(a) and 211(c), and seeks to enjoin the defendant from future violations of the Act. The defendant, on the other hand, contends that the duties of the four employees substantially affect the safety of operation of motor vehicles in interstate commerce, and that they should be accorded the exemption provided in 29 U.S.C.A. § 213(b) (1). The defendant further contends that if any of the employees are not exempt, its failure to comply with the standards prescribed by the Fair Labor Standards Act has been unintentional.

The questions thus presented are (1) whether or not one or more of the employees in question are exempt from overtime provisions of the Fair Labor Standards Act by virtue of Title 29 U.S. C.A. § 213(b)(1), and (2) if any of the employees are not exempt, whether the plaintiff is entitled to an injunction restraining future violations of the overtime provisions and record keeping requirements of the Act.

With reference to the first question, Title 29 U.S.C.A. § 213(b)(1) expressly provides that Title 29 U.S.C.A. § 207(a) (overtime provisions of the Fair Labor Standards Act) shall not apply to "any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49." The Motor Carriers Act makes it the duty of the Interstate Commerce Commission to regulate common carriers by motor vehicle, and to that end Title 49 U.S.C.A. § 304(a) (1) confers upon the Commission power to establish "reasonable requirements with respect to * * qualifications and maximum hours of service of employees, and safety of operation and equipment."

■ By the enactment of these two provisions, it was the obvious purpose of Congress, in the interest of safety, to confer upon the Interstate Commerce Commission exclusive power to prescribe qualifications and maximum hours of service with respect to employees in the motor carrier industry whose activities substantially affect the safety of operation of motor vehicles.

■ It is apparent that the Interstate Commerce Commission now considers "loaders" of trucks moving in interstate commerce to be within that class of persons over which it has the power to establish qualifications and maximum hours of service. Levinson v. Spector Motor Service, 1947, 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158. Three of the defendant's employees in question are classified as freight callers and the fourth is classified as a freight checker. However, these classifications have no bearing upon the issue here involved. It is well settled that in determining whether or not the activities of an employee come within the exemption provided for in 29 U.S.C.A. § 213(b)(1), the court is to be concerned with the nature of the work performed rather than the name given the position. Pyramid Motor Freight Corporation v. Ispass, 1947, 330 U.S. 695, 67 S.Ct. 954, 960, 91 L.Ed. 1184. It is equally well settled that if the loading and stacking activities of the three callers involved are more than "trivial, casual or occasional", and that such activities substantially affect safety of operation of motor vehicles moving in interstate commerce, the exemption would be applicable. Levinson v. Spector Motor Service, supra, and Pyramid Motor Freight Corporation v. Ispass, supra. Further, it is not a requisite that the Commission actually exercise the power conferred by statute, it being sufficient that the power to fix qualifications and maximum hours of service exist. Levinson v. Spector Motor Service, supra.

The evidence in regard to the amount of time the freight callers spend in loading and stacking activities is contradic-

tory. However, from the entire record, it is apparent that they perform some loading and stacking activities almost every day, certainly several hours each week, and that such loading and stacking activities are a normal and regular part of their employment.

■ Since the testimony of the witnesses offered by both plaintiff and the defendant establishes that the callers in question normally load heavy, mixed freight, and that they use their own judgment in placing such freight in outbound trailers, it is concluded that the defendant has sustained the burden of proving by a preponderence of the evidence that the loading and stacking activities of the three callers are vastly more than "trivial, casual or occasional", and that their activities substantially affect the safety of operation of motor vehicles in interstate commerce.

■ The situation is different with respect to the employee Tucker, who performs the duty of a freight checker. His principal duties and responsibilities relate to the expeditious handling of freight at the warehouse and directing freight to the proper outbound trailer. He has no responsibility for supervising or directing the physical loading of freight into trailers, and spends substantially all of his time in a control booth where it is impossible to observe the loading of trucks. He does not plan the loading in advance and has no control over the manner in which the freight is actually placed in the trailers. It is difficult to see how his occasional directions in regard to labeling dangerous commodities could have any significance with respect to the proper loading of outbound vehicles. While he is occasionally called upon to substitute for the dock foreman, his activities in this regard are so trivial and occasional as to not bring him within the exemption.

We now turn to the second question, that is whether or not the plaintiff is entitled to an injunction against the defendant restraining it from future vio-

lations of the record keeping requirements and overtime provisions of the Fair Labor Standards Act. In this connection, it appears that during the period in controversy the United States Department of Labor conducted a number of investigations at several of the defendant's terminals and subsequently suggested measures to be taken to correct certain violations. It further appears that the defendant took corrective measures with reference to all employees, except the four involved in this suit, and that as to them it expressed willingness to comply with the Act in the event further investigation indicated that the Department of Labor was correct in its position that they were not exempt.

■ After its own investigation, supplemented by independent advice from counsel, the defendant concluded that the four employees in question were not covered by the Fair Labor Standards Act. Accordingly, it refused to alter its method of payment. The entire record clearly indicates that the defendant honestly believed that its position was supported by law, and there is nothing to indicate bad faith. Neither is there anything in the record to indicate that the defendant's promise of future compliance was either idle or empty. Under these circumstances, and since the court has held that the defendant is correct in its position with respect to three of the employees in this suit, and the plaintiff is correct in its position with respect to only one of the employees, it is concluded that there is no necessity for injunctive relief. Mitchell v. Hodges Contracting Co., 5 Cir., 1956, 238 F.2d 380.

### Conclusions of Law

1. This court has jurisdiction over the subject matter of this action and of the parties.

2. The activities of defendant's employees Boles, Barbour and Emerson have a direct and substantial effect upon the safety of operation of motor vehicles in interstate commerce, and these employees are exempt from the overtime provisions and record keeping requirements of the Fair Labor Standards Act, Title 29 U.S. C.A. § 201 et seq.

3. The activities of the defendant's employee Tucker do not have such a direct and substantial effect upon the safety of operation of motor vehicles as to exempt this employee from the overtime provisions and record keeping requirements of the Fair Labor Standards Act, Title 29 U.S.C.A. § 201 et seq.

4. Plaintiff is not entitled to an injunction.