James P. MITCHELL, Secretary of Labor,

v.

HILL & HILL TRUCK LINE, INC.

Clauzell CULPEPPER

v.

HILL & HILL TRUCK LINE, INC.

Ned MILLER

v.

HILL & HILL TRUCK LINE, INC.

Civ. A. Nos. 11033, 11867, 11883.

United States District Court
S. D. Texas,
Houston Division.

April 27, 1960.

Harold C. Nystrom, Acting Sol., Washington, D. C., Earl Street, Regional Atty., and Truett E. Bean, Trial Atty., U. S. Dept. of Labor, Dallas, Tex., for plaintiff James P. Mitchell, Secretary of Labor.

Jim S. Phelps and Dale A. Letts, Houston, Tex., for plaintiff Clauzell Culpepper.

R. Wayne Amos, Houston, Tex., for plaintiff Ned Miller.

Baker, Botts, Andrews & Shepherd, John B. Abercrombie and Voris R. Burch, Jr., Houston, Tex., for defendant Hill & Hill Truck Line, Inc.

INGRAHAM, District Judge.

These are consolidated actions by former employees of defendant brought individually by Culpepper and Miller and by the Secretary of Labor of the United States in behalf of Teel, Kizzee, Jones, Potts, Singleton, and Jiles for unpaid compensation and liquidated damages allegedly due to said employees for overtime work during the term of their employment, as provided by the Fair Labor Standards Act, 29 U.S.C.A. §§ 201–219. The cases were tried before the court without a jury and are submitted for judgment upon the briefs of the parties.

The controversy centers on the defense that plaintiffs are employees concerning whom the Interstate Commerce Commission has power to establish qualifica-

464

tions and maximum hours of service, as provided by Section 204 of the Motor Carrier Act, 49 U.S.C.A. § 304, in which event said employees are exempt from the provisions of the Fair Labor Standards Act as to overtime compensation by terms of Section 13(b) (1), 29 U.S.C.A. § 213(b) (1). This issue, concerning the nature of the work of all plaintiff employees, presents common questions of fact and law on which all the cases can be decided.

Section 13 of the Fair Labor Standards Act reads in part as follows:

"(b) The provisions of section 207[1] of this title shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49 * * *."

Section 204 of the Motor Carrier Act, 49 U.S.C.A. § 304, states in part:

"It shall be the duty of the Commission—

"(1) To regulate common carriers by motor vehicle as provided in this chapter, and to that and the Commission may establish reasonable requirements with respect to * * * qualifications and maximum hours of service of employees, and safety of operation and equipment.

"(2) To regulate contract carriers by motor vehicle as provided in this chapter, and to that end the Commission may establish reasonable requirements with respect to * * * qualifications and maximum hours of service of employees, and safety of operation and equipment.

"(3) To establish for private carriers of property by motor vehicle, if need therefor is found, reasonable requirements to promote safety of operation, and to that end prescribe

qualifications and maximum hours of service of employees, and standards of equipment * * *."

In a series of proceedings culminating in Ex parte No. MC–2, 28 M.C.C. 125, the Interstate Commerce Commission determined that its jurisdiction under Section 204 to prescribe qualifications and maximum hours of service is limited to:

"* * * those employees who devote a substantial part of their time to activities which directly affect the safety of operation of motor vehicles in the transportation of passengers or property in interstate or foreign commerce." 28 M.C.C. 125, 139.

After extended hearings in Ex parte No. MC–2, supra, the Commission defined and discussed the loader classification of employees, as follows:

"The large carriers * * * and particularly those who have important operations from terminal to terminal, employ men variously called loaders, dockmen, or helpers, and hereinafter called loaders, whose sole duties are to load and unload motor vehicles and transfer freight between motor vehicles and between the vehicles and the warehouse.

"The evidence makes it entirely clear that a motor vehicle must be properly loaded to be safely operated on the highways of the country. If more weight is placed on one side of the vehicle than on the other, there is a tendency to tip when rounding curves. If more weight is placed in the rear of the vehicle, the tendency is to raise the front wheels and make safe operation difficult. Further, it is necessary that the load be distributed properly over the axles of the motor vehicle.

"Proper loading is not only necessary when heavy machinery, steel, and other like commodities are being transported, but is of impor-

1. Section 207, Title 29 U.S.C.A., relating to maximum hours and overtime compensation.

tance when normal package freight is handled. If several packing cases weighing from 150 to 200 pounds are loaded on one side of a motor vehicle or at one end thereof, and lighter freight on the other side or at the other end, safe operation is difficult. The great majority, if not all, of the carriers whose operations are of sufficient size or character to justify the employment of loaders handle freight of such weight that proper loading is necessary * * *." 28 M.C.C. 125, 133.

The Commission then made the following finding of fact:

"2. That loaders, as above defined * * * devote a large part of their time to activities which directly affect the safety of operation of motor vehicles in interstate or foreign commerce." 28 M.C.C. 125, 139.

■ These findings and conclusions of the Commission have been upheld by the Supreme Court. United States v. American Trucking Association, 1940, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345; Levinson v. Spector Motor Company, 1947, 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158; Pyramid Motor Freight Corporation v. Ispass, 1947, 330 U.S. 695, 67 S.Ct. 954, 91 L.Ed. 1184. It is well established that an employee is exempt from the overtime provisions of the Fair Labor Standards Act if a substantial part of his activities consists of work defined by the Commission as that of a loader. The trial court must determine whether or not an employee seeking recovery of overtime compensation under the Fair Labor Standards Act is engaged in activities, either as a whole or in substantial part, coming within the Commission's definition of the work of a "loader". Pyramid Motor Freight, supra, 330 U.S. at page 707, 67 S.Ct. at page 960.

Defendant operates a "pipe yard" in connection with its trucking business. Oil field pipe of various sizes, lengths and weights is received by barge, rail car, and truck, stored, and shipped out by truck and rail car. Much of defendant's trucking business is of an interstate nature. Plaintiffs were engaged partly in various operations connected with the loading of such trucks and composed the loading or "gin truck" crews. Their duties included measuring the pipe to compute the load, loading the pipe on a shuttle or "gin truck", and transferring it to a road truck entering commerce. If it were a pole trailer truck, plaintiffs might assist in adjusting its length. In loading the road truck plaintiffs placed a hook in each end of a joint of pipe; whereupon by use of a winch and gin pole the gin truck operator swung it toward the truck to be loaded. The driver of the road truck or the yard foreman supervised these activities, telling plaintiffs where to place the pipe and where to place the chocks that held the pipe in place. The driver usually chained the load down.

Defendant would show that its supervisory employees Middleton and · Box testified that plaintiffs were responsible for and actually performed the following operations which determined whether a load was safe:

(1) Keeping the overhang of the pipe within safe, legal limits;

(2) "Dodging" or staggering the collars of pipe and seeing that joints of pipe were laid straight in the grooves between other joints;

(3) Chaining the load down when the driver was not present and assisting the driver to do so when he was there;

(4) Keeping the pipe straight on the trailer so that it would run straight;

(5) Seeing that the load was balanced evenly;

(6) Fastening lugs or nailing chocks which held the outside joints of pipe on the trailer;

(7) Assisting the driver in lengthening the trailer and recoupling the air hose and electric wires, doing this alone if the driver was not present; and

(8) Physically placing the pipe on the trucks.

This testimony was collaborated by plaintiffs' own testimony. For example:

(1) Culpepper stated that he made sure there was no overhang over four feet at the back of the trailer;

(2) Miller stated that the gin truck operator occasionally told others where pipe was to go on the truck.

(3) Kizzee testified that the crew worked rapidly, spending three to five minutes on each joint of pipe and could load a truck in fifteen minutes.

(4) Teel stated that the loader at the rear of the truck helped the driver to position the pipe on the trailer and that said loader and the driver would tell each other which way to move joints being loaded. He also said that he knew the collars were to be dodged and that the collars were often loaded at the rear of the trailer.

(5) Knipe, a former driver, testified that the collars were loaded at either the front or back of the trailer and that the loader at the rear collared or dodged the pipe if the collars were at the rear. He also stated that loading was a steady procedure, that the crews knew what they were doing, that they laid the pipe where it was supposed to go, and that the pipe usually was straight without anyone having to say anything. He also stated that he was there to see that the pipe was loaded safely and ready to travel.

Defendant contends that plaintiffs were engaged in activities which placed them within the Commission's definition of "loaders", since what they did affected the safety of operation of the trucks they loaded, no matter how closely supervised they may have been. Plaintiffs contend that loaders are engaged in activities affecting safety of operation only so long as they have responsibility when motor vehicles are being loaded for exercising judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that safe operation of the vehicle on the highways in interstate or foreign commerce will not be jeopardized.

■ The court believes that plaintiffs were engaged in activities which placed them within the Commission's definition of "loaders", since what they did affected the safety of the trucks they loaded. In effect, plaintiffs contend that every loader must be a "boss", trusted with ultimate responsibility for the safe loading of his employer's trucks, if he is to come within the Commission's definition of "loaders". This interpretation is not warranted by the text of Ex parte No. MC–2, supra, or court decisions interpreting that opinion. What the Commission intended to cover was the physical act of loading freight in a safe manner so that the trucks might be operated safely on the highways. Certainly every workman is responsible for doing his job well, even though his labor may be supervised closely and checked for accuracy by his supervisors. If safety depended upon the supervision and checking of the "boss", no one could depend upon the safety of trucks that were not so checked. Rather, safety depends upon the efforts of loaders who know know what they are doing, who do the job the way it is to be done, and who are responsible for their actions. If, as in the case at bar, their actions directly affect the safety of the trucks they load, they fall within the Commission's definition of "loaders" and are excepted from the overtime provisions of the Fair Labor Standards Act.

This interpretation of Ex parte No. MC–2 is consistent with Levinson v. Spector Motor Company, supra, in which the Supreme Court held that a "checker" or terminal foreman was within the loader classification, since his activities consisted of "the doing or immediate direction of the very kind of activities of a loader that are described by the Commission as directly affecting [the] safety of operation." Levinson, supra, 330 U.S. at pages 681 and 685, 67 S.Ct. at page 947. The employee was exempt whether directing or doing loading; the persons under his supervision were

exempt, even though they received directions from him concerning their loading.

Plaintiffs' authorities concerning the requirement of "responsibility" or "discretion" in the loading definition are not persuasive. Initial reliance is placed upon an Interpretative Bulletin of the U. S. Department of Labor, 29 Code of Federal Regulations, Section 782, in which the Secretary of Labor stated that an employee who has no responsibility for the proper loading of a motor vehicle is not within the exemption as a loader because he renders physical assistance in loading or arranging freight in a vehicle "where another employee tells him exactly what to do in each instance, and he is given no share in the exercise of discretion as to the manner in which loading is done." As the Supreme Court pointed out in the Levinson case, the Section 13(b) (1) exemption from the Fair Labor Standards Act is not an exemption to be measured by the regulations of the Wage and Hour Administrator, now of the Secretary of Labor. "Instead, we are dealing here with the interpretation of the scope of the safety program of the Interstate Commerce Commission, under § 204 of the Motor Carrier Act, which in turn is to be interpreted in the light of the regulations made by the Interstate Commerce Commission pursuant to that Act." Levinson, supra, 330 U.S. at page 677, 67 S.Ct. at page 945.

Plaintiffs' various citations of the term "discretion" in case discussions of the exemption are not persuasive, since the facts of the cases make it apparent that the courts did not intend by use of this term to depart from the established definition of the loader exemption. In Foremost Dairies, Inc. v. Ivey, 5 Cir., 204 F.2d 186, 187, cited by plaintiffs in support of this position, the employees denied relief were not within the Commission's definition of "loaders", since their employer was an ice cream manufacturer not engaged as a regular matter in the business of a motor carrier and since the employees were engaged primarily in duties not connected in any manner with the loading of trucks. Their loading duties were trivial, casual, and only an occasional part of their activities. Pyramid Motor Freight Corporation v. Ispass, supra; McKeown v. Southern California Freight Forwarders, D.C.Cal.1943, 49 F.Supp. 543; Sumrall v. T. E. Mercer Trucking Co., D.C. S.D.Tex., 183 F.Supp. 761; Mitchell v. Meco Steel Supply Co., D.C.S.D.Tex., 183 F.Supp. 777.

No action is taken upon defendant's plea of limitation to the claim of plaintiff Culpepper.

Defendant's motions for judgment will be granted. Clerk will notify counsel to draft and submit judgments accordingly.