John T. BLANKENSHIP, Gerald Wayne Hodges and Virgil Olen McDonald, Appellees,

v.

THURSTON MOTOR LINES, INC., Appellant.

No. 13257.

United States Court of Appeals Fourth Circuit.

Argued June 12, 1969.

Decided Sept. 26, 1969.

J. W. Alexander, Jr., Charlotte, N. C. (Ernest W. Machen, Jr., Brown, Hill, Boswell and Blakeney, Alexander & Machen, Charlotte, N. C., on brief), for appellant.

John C. Towler, Roanoke, Va. (Frank N. Perkinson, Jr., Roanoke, Va., on brief), for appellees.

Before SOBELOFF, WINTER and CRAVEN, Circuit Judges.

WINTER, Circuit Judge:

Thurston Motor Lines, Inc. appeals from judgments against it obtained by three former employees, who sued under the Fair Labor Standards Act, 29 U.S.C. A. § 201 et seq., to recover overtime compensation to which they claimed they were entitled. In the district court, Thurston contended that its employees Hodges and McDonald were not covered by the overtime provisions of the Act, but the district judge concluded otherwise and awarded them damages. The district judge agreed that a third employee, Blankenship, was not covered by that part of the Act. However, he also gave Blankenship judgment, concluding that, under the minimum wage provisions of the Act, he had not been fully compensated for the number of hours he had worked. We reverse and direct the entry of judgments for defendant.

—I—

Under the Motor Carrier Act of 1935, the Interstate Commerce Commission

was accorded the power to "establish reasonable requirements with respect to * * * qualifications and maximum hours of service of employees, and safety of operation and equipment" of common carriers by motor vehicle. 49 U.S.C.A. § 304(a) (1).[1] Three years later, when the Fair Labor Standards Act [FLSA] was adopted, Congress expressly provided that overtime provisions of the Act[2] "shall not apply with respect to * * any employee with respect to whom the Interstate Commerce Commission [now the Secretary of Transportation] has power to establish qualifications and maximum hours of service pursuant to the provisions of Section 304 of Title 49." 29 U.S.C.A. § 213(b) (1) (1965). In defining the interrelation between these statutory provisions, the Supreme Court has held that only those employees who were engaged in work which may affect the safety of the operation of motor vehicles were subject to the I.C.C.'s jurisdiction and, consequently, with respect to them, their employers were exempt from the overtime requirements of the FLSA. United States v. American Trucking Associations, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940). The Supreme Court has also held that the general class of workers to which all of the plaintiffs belonged, that is, loaders or supervisors of loaders of freight into trucks moving in interstate commerce, was subject to I.C.C. jurisdiction and hence exempt from the FLSA overtime provisions. Levinson v. Spector Motor Service, 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158 (1947).

–II–

Hodges and McDonald were employed as dock-workers and it is not disputed that among their principal duties was the loading of trucks engaged in interstate commerce. Hodges and McDonald contend, however, that both were so closely supervised in the performance of their assigned tasks that they bore no independent responsibility for the safe loading of the various vehicles and were not, consequently, within I.C.C. jurisdiction. Thus, they claim that they were not exempt from the overtime sections of the FLSA. We cannot agree, because this position, in our view, is factually untenable in the instant case.

Before turning to the facts, we note that the Interstate Commerce Commission, in defining and discussing the "loader" classification of employees, drew no distinction between various categories of employees with respect to the extent or degree of supervision, independent decision or discretion which each exercised. Ex parte No. MC–2, 28 MCC 125, 133–134. Persuasive authorities both intimate and explicitly hold that loaders, even if closely supervised, remain within I.C.C. jurisdiction. Mitchell v. Hill & Hill Truck Line, 183 F.Supp. 463, 466–467 (S.D. Tex. 1960);[3] Sumrall v. T. E.

---

1. These functions of the I.C.C. were transferred to the Secretary of Transportation by Pub.L. 89–670, 49 U.S.C.A. § 1655(e) (6) (C).

2. The pertinent section of the FLSA is 29 U.S.C.A. § 207(a) (1):
"Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

3. "[P]laintiffs contend that every loader must be a 'boss,' trusted with ultimate responsibility for the safe loading of his employer's trucks, if he is to come within the Commission's definition of 'loaders.' This interpretation is not warranted by the text of Ex parte No. MC–2, supra, or court decisions interpreting that opinion. What the Commission intended to cover was the physical act of loading freight in a safe manner so that the trucks might be operated safely on the highways. Certainly every workman is responsible for doing his job well, even though his labor may be supervised closely and checked for accuracy by his supervisors. If

Mercer Trucking Co., 183 F.Supp. 761 (S.D.Tex.1958). See Levinson v. Spector Motor Service, *supra;* Mitchell v. Overnite Transportation Co., 176 F.Supp. 399 (M.D. N.C. 1959).

Plaintiffs' authorities do not compel a different conclusion. These cases, of which the discussion in Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695, 708, 67 S.Ct. 954, 91 L.Ed. 1184 (1947), is illustrative, merely demonstrate the application of the *de minimis* rule, that is, that I.C.C. jurisdiction would not attach if an employee's activities directly related to the safety of interstate vehicles were trivial in relation to his overall duties. These authorities are primarily concerned with factors other than the issue of the degree of supervision or discretion assigned to the employee.[4] *E. g.,* Morris v. McComb, 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44 (1947) (employees devoting only 4% of time to interstate activities nevertheless regulable by I.C.C.). In the instant case it is not contended that the actual amount of time which plaintiffs consumed in loading operations was not substantial.

Plaintiffs also rely upon Interpretive Bulletin No. 782, published by the Department of Labor, which states in part that

"an employee who had no responsibility for the proper loading of a motor vehicle is not within the exemption as a 'loader' merely because he furnishes physical assistance when necessary in loading heavy pieces of freight, or because he deposits pieces of freight in the vehicle for someone else to distribute and secure in place, or even because he does the physical work of arranging pieces of freight in the vehicle *where another employee tells him exactly what to do in each instance and he is given no share in the exercise of discretion as to the manner in which the loading is done.*" 29 C.F.R. § 782.5 (c), pp. 508–509. (Emphasis added.)

Assuming *arguendo* that the foregoing represents a correct statement of the law, we are persuaded that it fails to characterize adequately the factual circumstances of the instant case with respect to the scope of Hodges' and McDonald's duties, for the record clearly indicates that these employees were *not*, in each instance, told exactly how the loading was to be accomplished.

■ In brief summary, the testimony of the president of Thurston Motor Lines was to the effect that workers such as Hodges and McDonald were not specifically instructed where every piece of freight should be placed, but rather were called upon to exercise their own judgment and discretion in the process of loading. Terminal Manager McClure testified that both Hodges and McDonald exercised discretion in loading freight after they had been given a certain

safety depended upon the supervision and checking of the 'boss,' no one could depend upon the safety of trucks that were not so checked. Rather, safety depends upon the efforts of loaders who know what they are doing, who do the job the way it is to be done, and who are responsible for their actions. If, as in the case at bar, their actions directly affect the safety of the trucks they load, they fall within the Commission's definition of 'loaders' and are excepted from the overtime provisions of the Fair Labor Standards Act.

This interpretation of Ex parte No. MC–2 is consistent with Levinson v. Spector Motor Service, *supra, * * *.* The employee was exempt whether directing or doing loading; the persons under his supervision were exempt, even though they received directions from him concerning their loading." Mitchell v. Hill & Hill Truck Line, *supra*, at 466–467.

4. In Wirtz v. C & P Shoe Corp., 336 F.2d 21, 29 (5 Cir. 1964), the Court indicated that the I.C.C. exception to the FLSA is inapplicable if the employee exercised no discretion in performing the loading operation. However, since we have concluded that, as a matter of fact, all of the plaintiffs in the instant case did exercise some degree of discretion in performing their loading functions, we need not decide what approach we would adopt if it were plainly demonstrable that an employee in fact exercised no discretion whatever in the performance of his duties.

amount of instruction by other company employees. Curtis Farris, another employee of Thurston, who was called as plaintiffs' witness, testified in part as follows:

"[Defendant's Attorney] Q. Now, did he [the supervisor] follow Hodges into each truck with each piece of freight and tell him where to set it?

"A. No, sir—not that. But, in other words, if he had freight he wanted loaded, he told Hodges what truck to go on.

"Q. And Hodges put it on that truck?

"A. Yes, sir.

"Q. And the same was true of McDonald?

"A. Right."

Plaintiff Blankenship, who, during at least part of the period in question, was the supervisor of Hodges and McDonald, testified that he did not follow them into a particular truck every time one or the other took freight in to load it, but that he merely checked their work at various intervals. Neither Hodges nor McDonald testified.

The picture which emerges from this testimony is one in which Hodges and McDonald exercised significant discretion in performing their task of loading freight. It is true that they and the other loaders were supervised, that is, were told which trucks to load and that their work was checked, albeit somewhat haphazardly. These factors, however, do not render inconsequential the initial discretion exercised by Hodges and McDonald. We, therefore, hold, in accordance with the authorities previously discussed, that at least where, as here, the employee retains some appreciable

discretion in conducting the loading operation in the first instance, his employer is exempt from the overtime provisions of the FLSA. To the extent that the district judge's opinion may be read as finding as a fact that Hodges and McDonald exercised no discretion in the performance of their loading duties, his findings were clearly erroneous.

—III—

■ The district court concluded, correctly, that Blankenship was exempt from the overtime provisions of the FLSA because he was charged not only with loading vehicles but also with supervising others, including Hodges and McDonald, who were engaged in loading activity. Blankenship does not, in this appeal, attack this conclusion.

Nevertheless, the district judge determined that Blankenship was entitled to relief on the following theory: Prior to March, 1966, Blankenship was compensated for his services on the basis of an hourly wage of $2.30. In March, 1966, the basis of compensation was converted to a weekly salary of $115.00, which was shortly thereafter increased to $120.00 per week. The district judge calculated that this conversion was effected on the supposition that Blankenship would be required to work 50 hours per week. The judge then noted that, prior to the conversion, Blankenship had been working an average of 60 hours a week. No records were kept to show how many hours Blankenship actually worked after he was changed to a flat salary, but the district judge considered that Blankenship had worked approximately the same length of time, which, therefore, included ten hours per week for which he had received no compensation.[5] The district judge,

---

5. The correctness of the district judge's finding that Blankenship worked an average of 60 hours per week after he was placed on a weekly salary is highly questionable. The evidence seems clear that Blankenship was converted to a flat salary because he clocked unnecessary hours when he was paid on an hourly basis by remaining at the freight terminal during those times of the day when there was

no work to be done. Blankenship concurred in a reduction of his hours and the parties assumed that his duties could be performed in 50 hours per week. However, the parties made no agreement that Blankenship would be paid more or less salary if the need for his services was more or less than 50 hours per week. The evidence also establishes that after his flat salary was begun Blankenship

therefore, ordered that Blankenship be paid for 10 hours at the minimum wage rate for those weeks during which he had been on salary, apparently on the theory that the minimum wage provisions of the Fair Labor Standards Act, 29 U.S.C. A. § 206(a), had been violated.

█ Although Blankenship was exempt from the overtime provisions of the FLSA, he was not exempt from the Act's minimum wage provisions. However, United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487 (2 Cir. 1960), which, we are persuaded, contains a correct statement of the law relevant to this case, shows that the minimum wage provisions were not violated.

In *Klinghoffer*, certain employees agreed to work a specified number of hours for a given compensation and, in addition, to work for other periods with no compensation whatever. The Court concluded the work*week* constituted the period of time over which wages should be measured to determine whether the employer was in compliance with the minimum wage provisions and that there was no statutory violation so long as "each employee received during each week compensation equal to or exceeding the product of the total number of hours worked and the statutory minimum hourly rate." 285 F.2d at 493.[6]

█ In the instant case, it is clear that, applying the principles of *Klinghoffer*, there was no minimum wage violation. Even if the district court's finding that Blankenship averaged 60 hours per week is accepted, his compensation of $115 to $120 a week was greatly in excess of the minimum wage rate, which varied between $1.25 and $1.40 per hour.

We conclude that Blankenship, as well as Hodges and McDonald, was not entitled to recovery under the Act. The judgments for plaintiffs will be reversed, with directions to enter judgments for their former employer.

Reversed with directions.

---

did not remain at the terminal as long as previously, and took a few hours off each afternoon in the interim between the end of morning loading and the beginning of afternoon loading. But in our view of the case, we need not disturb this finding.

6. The government argues, nevertheless, that all of such weekly wage was allocated by agreement to the work done at [location] 3300, so that the work at [location] 3408 was performed without pay. Therefore, it is contended, the time worked at 3408 was paid for at a rate of $0.00 per hour, or an amount less than the $1.00 minimum requirement. "If the total wage paid to each guard in this case during any given week is divided by the total time he worked that week, the resulting average hourly wage exceeds $1.00 for every week and every guard involved. We believe this is all that is necessary to meet the require-

ments of § 206(a). The Congressional purpose underlying that section was to guarantee a minimum livelihood to the employees covered by the Act. Payment at intervals shorter than weekly is unusual and is not necessary to enable the employees to meet their customary obligations. Accordingly the Congressional purpose is accomplished so long as the total weekly wage paid by an employer meets the minimum weekly requirements of the statute, such minimum weekly requirement being equal to the number of hours actually worked that week multiplied by the minimum hourly statutory requirement. Hence so long as this weekly requirement is met, § 206(a) is not violated if the parties by agreement treat all of that wage as being paid for part of the work and regard certain other work as done for nothing." United States v. Klinghoffer Bros. Realty Corp., *supra*, at 490.