# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 15-2201

———————————————

Glenn Williams, on behalf of himself and all others similarly situated

*Plaintiff - Appellant*

v.

Central Transport International, Inc., et al.

*Defendants - Appellees*

———————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

———————

Submitted: January 12, 2016
Filed: July 28, 2016

———————

Before LOKEN, GRUENDER, and KELLY, Circuit Judges.

———————

LOKEN, Circuit Judge.

The Fair Labor Standards Act (FLSA) provides that employers must pay non-exempt employees at "one and one-half times the regular rate" for time worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). The FLSA exempts "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service" under the Motor Carrier Act (MCA). 29 U.S.C. § 213(b)(1) (hereafter, "the MCA Exemption"). Central

Transport, LLC, ships freight throughout the United States and is a "motor carrier" subject to the Secretary's MCA jurisdiction. See 49 U.S.C. §§ 13102(14), 13501.

Glenn Williams brought this action alleging that Central Transport violated the FLSA's overtime requirements when it employed him as a "switcher" at its St. Louis terminal from October 2012 through May 2013.[1] The district court[2] granted Central Transport summary judgment, agreeing that Williams worked as a "loader" of freight in interstate commerce and thus fell within the MCA Exemption. Williams appeals. The question of how Williams spent his time working for Central Transport is a question of fact; the ultimate issue of whether his work activities exempted Central Transport from paying FLSA overtime is one of law. See Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986); Jarrett v. ERC Props., Inc., 211 F.3d 1078, 1081 (8th Cir. 2000). Reviewing the grant of summary judgment and the district court's interpretation of these federal statutes *de novo*, we affirm. See McCall v. Disabled Am. Veterans, 723 F.3d 962, 965 (8th Cir. 2013) (standard of review).

## I.

Enacted in 1935, the MCA authorized the Interstate Commerce Commission (ICC) to set the "qualifications and maximum hours of service" for employees of motor vehicle common carriers. 49 U.S.C. § 304(a) (repealed).[3] In 1938, Congress enacted the FLSA, which empowered the Secretary of Labor to regulate the maximum

---

[1]Williams filed the lawsuit as a collective action on behalf of himself and "other similarly situated employees." See 29 U.S.C. § 216(b). However, no other employee opted into the suit.

[2]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

[3]Congress transferred the ICC's functions to the Secretary of Transportation with some revision of the statute; this jurisdiction remains. See 49 U.S.C. § 31502(b).

hours of covered employees. See 29 U.S.C. § 207(a)(1). Congress included the MCA Exemption to avoid potentially overlapping jurisdictions. In the following years, the Supreme Court issued a series of decisions interpreting the MCA Exemption; those decisions govern the issue raised by Williams on appeal.

In United States v. American Trucking Ass'ns, 310 U.S. 534, 553 (1940), the Court rejected the contention of interstate truckers that *all* their employees are exempt, concluding that the ICC's jurisdiction to regulate maximum hours "is limited to those employees whose activities affect the safety of [motor carrier] operation." In Southland Gasoline Co. v. Bayley, 319 U.S. 44, 47-48 (1943), the Court held that the MCA Exemption applies whenever the Secretary of Transportation has the authority to regulate the maximum hours of motor carrier employees, whether or not that authority has been exercised. Thus, it is irrelevant that the Secretary has never set maximum hours for motor carrier employees such as Williams.

Before and after enactment of the FLSA, the ICC issued numerous reports and regulations dealing "so thoroughly and expertly with the safety of operation of interstate motor transportation as to entitle them to especially significant weight in the interpretation of [the MCA]." Levinson v. Spector Motor Serv., 330 U.S. 649, 662 (1947). Following the Court's decision in American Trucking, the ICC after extensive hearings ruled that motor carrier drivers, mechanics, loaders, and drivers helpers "perform duties which affect the safety of operation and are therefore subject to the authority conferred [by the MCA] to prescribe qualifications and maximum hours of service." MC-2, 28 M.C.C. 125, 126 (1941).

In Levinson, the Court upheld the ICC's conclusion that loaders, as a class, affect safety of operation:

> The evidence makes it entirely clear that a motor vehicle must be properly loaded to be safely operated on the highways of the country.

If more weight is placed on one side of the vehicle than on the other, there is a tendency to tip when rounding curves. If more weight is placed in the rear of the vehicle, the tendency is to raise the front wheels and make safe operation difficult. Further, it is necessary that the load be distributed properly over the axles of the motor vehicle.

330 U.S. at 652 n.2, quoting MC-2, 28 M.C.C. at 134. The Court clarified that the MCA Exemption applies even if a loader does not spend all or even most of his time on safety-affecting activities. To fall within the ICC's (now the Secretary of Transportation's) jurisdiction, it is enough that an employee devote "a substantial part of his time to activities directly affecting safety of operation." Id. at 674, 681 (quotation omitted). In so ruling, the Court rejected the contrary position of the Department of Labor (DOL), appearing as *amicus curiae*:

[I]t is important to recognize that, by virtue of the unique provisions of [the MCA Exemption], we are *not* dealing with an exception to [the FLSA] which is to be measured by regulations which Congress has authorized to be made by the Administrator of the Wage and Hour Division, United States Department of Labor. Instead, we are dealing here with the interpretation of the scope of the safety program of the [ICC], under § 204 of the Motor Carrier Act, which in turn is to be interpreted in the light of the regulations made by the [ICC] pursuant to that Act. Id. at 676-77.

In a companion case to Levinson, the Court held that whether a particular employee falls within an exempt class, such as loader, "is to be determined by judicial process." Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695, 707 (1947). The Court further explained:

In contrast to the loading activities in the Levinson case, the mere handling of freight at a terminal, before or after loading, or even the placing of certain articles of freight on a motor carrier truck may form so trivial, casual or occasional a part of an employee's activities . . . that

-4-

his activities will not come within the kind of 'loading' which is described by the [ICC] and which, in its opinion, affects safety of operation.

Id. at 708. The final Supreme Court decision relevant to construing the MCA Exemption is Morris v. McComb, 332 U.S. 422, 434 (1947), where the Court held that the ICC had jurisdiction to regulate the maximum hours of all randomly assigned drivers and mechanics of a motor carrier whose operations were only 3-4% in interstate commerce, and therefore the MCA Exemption applied to these employees. As in Levinson, the Court rejected the DOL's contrary contention.

## II.

As a switcher, Williams's duties included loading and unloading trailers, moving trailers to and from loading docks, and repositioning freight with a forklift. Williams testified that he loaded freight every week and nearly always worked on the loading dock when working past the end of his shift. Williams loaded two types of trailers -- "line-haul" and "city." Line-haul trailers carry freight from St. Louis to terminals around the country, whereas city trailers make deliveries in the St. Louis region, which includes neighboring Illinois. Line-haul trailers are loaded "high and tight," meaning freight is packed wall-to-wall and floor-to-ceiling to prevent shifting in transit. For city trailers, freight is spread across the floor, so the driver can access the freight at each delivery. Though designated by Central Transport as a "city loader," Williams regularly loaded both types of trailers. Central Transport submitted uncontested evidence that Williams loaded a total of 3,827 pieces of freight onto line-haul trailers during the period in question.

Williams lacked prior experience as a loader and knowledge of proper loading techniques. Central Transport provided some initial training, and then, as Williams testified, "I learned kind of as I would go." At first, Williams would quickly place

freight on the trailers and a more experienced loader would "fit it how he would want it done." With guidance from supervisors, Williams learned how to build a balanced load; install a "decking system" inside the trailer to stack and secure freight; place containers of liquid low due to their weight; position heavy freight in the nose of small trailers; brace top-heavy freight with other freight or with load bars; and safely load hazardous material such as corrosives, flammables, and gases. When loading line-haul trailers, Williams picked up the freight and loaded it by himself.[4] Supervisors monitored and corrected the loading work of dockworkers and checked line-haul trailers before they left the dock. But supervisors did not follow Williams around, constantly supervising his loading.

### III.

Williams acknowledges that loaders are exempt from the FLSA but argues the district court erred in classifying *him* as a loader. The Supreme Court in <u>Levinson</u> held that an employee falls within this exempt class if "a substantial part of [his] activities consisted of the doing or immediate direction of" activities that the ICC described as directly affecting the safety of operation, such as "loading, distributing and making secure heavy or light parcels of freight on board a truck so as to contribute as much as possible to the safety of the trip." But this does not include non-safety-related activities such as "placing freight in convenient places in the

---

[4]Williams testified at his deposition:

> Q: So my question to you is: These 3,827 times, almost 4,000, that you loaded freight onto line haul trailers, I take it you did that by yourself, you unloaded that freight by yourself, you loaded it by yourself; is that correct?

> A: Yes. That would be correct.

terminal [or] checking bills of lading."  330 U.S. at 674, 681; see Pyramid, 330 U.S. at 708; MC-2, 28 M.C.C. at 134.

The summary judgment record conclusively establishes that a substantial part of Williams's work consisted of loading activities the ICC described as directly affecting the safety of motor carrier operation.  He not only participated in the loading of trailers destined for interstate line-haul operation, he frequently performed the loading operation by himself, including safety-related tasks such as balancing trailer loads, installing decks to safely stack freight "high and tight," bracing top-heavy freight, loading hazardous materials, and so forth.  Over his relatively brief tenure at Central Transport, Williams loaded thousands of parcels onto line-haul trailers and presumably thousands more onto city trailers, which delivered freight into neighboring Illinois.  This was not the sort of "trivial, casual or occasional" activity that triggers Pyramid's *de minimis* exception to the MCA Exemption.  Cf. Opelika Royal Crown Bottling Co. v. Goldberg, 299 F.2d 37, 42-43 (5th Cir. 1962) (warehouseman who "on infrequent occasions" helped with loading not exempt).

Despite this undisputed evidence of his actual duties in loading freight onto Central Transport trailers, Williams argues the MCA Exemption does not apply because he did not have responsibility "for exercising judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways . . . will not be jeopardized," as DOL regulations require.  29 C.F.R. § 782.5(a).  The district court carefully considered the extensive summary judgment record and concluded that undisputed evidence established that Williams *did* exercise the requisite judgment and discretion.  We agree.

In addition, we conclude that "exercising judgment and discretion" is not the governing standard.  As the Supreme Court held in Levinson, 330 U.S. at 676-77, the DOL has no authority to define what employees are subject to the Secretary of

Transportation's jurisdiction and therefore fall within the MCA Exemption, a ruling acknowledged in the DOL's regulations. See 29 C.F.R. § 782.1(a). Accordingly, we give no weight or deference to the DOL's regulation purporting to define who is an exempt loader. Accord Packard v. Pittsburgh Transp. Co., 418 F.3d 246, 251 n.5, 252-53 (3d Cir. 2005), cert. denied, 547 U.S. 1093 (2006); Troutt v. Stavola Bros., 107 F.3d 1104, 1109 n.1 (4th Cir. 1997); Benson v. Universal Ambulance Serv., Inc., 675 F.2d 783, 785 (6th Cir. 1982); Khan v. IBI Armored Servs., Inc., 474 F. Supp. 2d 448, 456 n.8 (E.D.N.Y. 2007).

Moreover, the DOL regulation, 29 C.F.R. § 782.5(a), is contrary to the Supreme Court's governing standard. The ICC asserted jurisdiction over loaders because "a motor vehicle must be properly loaded to be safely operated on the highways." MC-2, 28 M.C.C. at 134. "What the [ICC] intended to cover was the physical act of loading freight in a safe manner." Blankenship v. Thurston Motor Lines, Inc., 415 F.2d 1193, 1195 n.3 (4th Cir. 1969) (quotation omitted). "[L]oaders, even if closely supervised, remain within I.C.C. jurisdiction." Id. at 1195-96 (collecting cases). Thus, Pyramid's *de minimis* exception "is not based upon whether the worker was supervised in activities that have an undeniable, direct effect on safety," such as loading a trailer bound for interstate travel. Vaughn v. Watkins Motor Lines, Inc., 291 F.3d 900, 905 (6th Cir. 2002).

Based on the Supreme Court's controlling precedents, we conclude that, if an employee spends a substantial part of his time (as defined in Levinson, Pyramid, and Morris) participating in or directing the actual loading of a motor vehicle common carrier's trailers operating in interstate or foreign commerce, the Secretary of Transportation has the authority to regulate that employee's hours of service and the MCA Exemption applies, regardless of the employee's precise role in the loading process. As the summary judgment record conclusively establishes that a substantial part of Williams's time during the relevant period was spent loading Central

Transport trailers for interstate transportation, the MCA Exemption applies, and the district court properly granted summary judgment dismissing his FLSA claims.[5]

The judgment of the district court is affirmed.

_____

[5]This conclusion makes irrelevant and/or moot Williams's additional contention that the district court abused its discretion in excluding his declaration that he "did not exercise [his] own direction or judgment in placing freight" on Central Transport's line-haul trailers on the ground that the declaration conflicted with his prior deposition testimony.