# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-3378

_____

Michael LaCurtis, Kris Daniels, and Gerald Young, each on behalf of himself and all others similarly situated

*Plaintiffs - Appellees*

v.

Express Medical Transporters, Inc. and Hospital Shuttle Service, Inc.

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 5, 2017
Filed: May10, 2017

_____

Before WOLLMAN and LOKEN, Circuit Judges, and ROSSITER,[1] District Judge.

_____

ROSSITER, District Judge.

In this consolidated putative class- and collective-action case, Express Medical Transporters, Inc. and Hospital Shuttle Service, Inc. (collectively, "EMT") appeal

_____

[1]The Honorable Robert F. Rossiter, Jr., United States District Judge for the District of Nebraska, sitting by designation.

from an order of the district court[2] denying EMT's motion for summary judgment and granting partial summary judgment for Michael LaCurtis ("LaCurtis") on the issue of EMT's liability to pay him for unpaid overtime. With jurisdiction under 28 U.S.C. § 1292(b), we affirm.

## I.    BACKGROUND

EMT is a licensed interstate motor carrier regulated by the Federal Motor Carrier Safety Administration ("FMCSA"), a division of the U.S. Department of Transportation ("DOT"). *See* 49 U.S.C. §§ 13102(14), 31501(2). EMT provides non-emergency medical and student transportation in Missouri and Arkansas and is engaged in interstate commerce. To provide those services, EMT operates a fleet of vehicles, including several wheelchair-equipped paralift vans. The paralift vans are full-size Ford E-250 and E-350 vans originally designed and manufactured to carry up to twelve and fifteen passengers, respectively. The vans have a gross vehicle weight rating of 10,000 pounds or less.

Before being placed into service at EMT, these new Ford E-250 and E-350 vans are redesigned and converted by a third-party company, New England Wheels, Inc. ("New England Wheels"), into paralift vans by permanently removing some of the seats to allow the installation of up to two wheelchair positions. New England Wheels also alters the doors and roof and installs wheelchair ramps and lifts. After converting a van, New England Wheels places a new placard on the driver's side door pillar to comply with the National Highway Transportation Safety Administration's ("NHTSA") manufacturer labeling requirements for tire and loading information. *See* 49 C.F.R. § 571.110 S4.3.

---

[2]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

Record photographs of the new placards in two EMT paralift vans configured "similarly" to the vans at issue in this case indicate maximum seating capacities, as modified, of five and six passengers, respectively. As the district court noted, it is unclear how those maximum seating capacities were calculated. EMT agrees one of the modified paralift vans pictured can transport two passengers in wheelchairs and up to three additional passengers and the other modified paralift van pictured can transport two passengers in wheelchairs and up to five additional passengers.

LaCurtis has been employed by EMT to drive paralift vans since January 10, 2012. LaCurtis and similarly situated drivers operate EMT's paralift vans in interstate commerce as members of a pool of employee drivers.[3] Although the drivers routinely work more than forty hours a week, EMT does not pay them overtime as generally required by the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Missouri Minimum Wage Law, Mo. Rev. Stat. § 290.500 *et*

---

[3]It is clear from the record and oral argument that the parties do not agree as to (1) which EMT vans are at issue in this consolidated putative class and collective action and (2) how those vans were configured when operated by EMT employees. LaCurtis maintains all of the paralift vans at issue were configured to seat only fewer than eight total passengers. EMT asserts that at least some of the paralift vans operated by its employees had fold-down seats that allowed them to seat nine or more passengers. With respect to LaCurtis only, the district court determined summary judgment on liability was appropriate despite the disagreement because EMT admitted "the vast and substantial majority of [LaCurtis's] time on a weekly basis has been spent operating paralift vans that are configured similarly to those depicted in [the record photographs described above], which do not have enough fold-down seats to allow for seating of more than eight persons." EMT has not directly challenged that conclusion on appeal, so we accept it as undisputed for the purpose of evaluating summary judgment for LaCurtis only. We express no opinion as to (1) how the vans operated by other EMT employees were configured, (2) whether claims related to other employees are suitable for summary judgment, or (3) whether EMT is liable to pay overtime to any employee other than LaCurtis. We also express no opinion as to any issues related to class- or collective-action certification.

*seq.*, which is interpreted in accordance with the FLSA. *See* Mo. Rev. Stat. § 290.505.

Title 29, section 207(a)(1) generally requires employers to compensate overtime hours "at a rate not less than one and one-half times the [employee's] regular rate" of pay. EMT maintains the drivers are not eligible for overtime because the overtime provision does not apply to "any employee with respect to whom the Secretary of Transportation [("Transportation Secretary")] has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." *See* 29 U.S.C. § 213(b)(1). Section § 31502(b) gives authority to the Transportation Secretary to set the "qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier." Commonly known as the Motor Carrier Act ("MCA") exemption, this exemption is designed "to avoid potentially overlapping jurisdictions" between the Transportation Secretary, who now administers the MCA, and the Secretary of Labor ("Labor Secretary"), who administers the FLSA. *Williams v. Cent. Transp. Int'l, Inc.*, 830 F.3d 773, 775 (8th Cir. 2016).

In 2008, Congress passed the SAFETEA-LU Technical Corrections Act of 2008 ("TCA"), which narrowed the scope of the MCA exemption. Under the TCA, the FLSA overtime provisions "apply to a covered employee notwithstanding the [MCA exemption]." Pub. L. No. 110-244, Title III, § 306(a) (2008). As relevant here, "the term 'covered employee' means" an EMT driver or helper "whose work, in whole or in part," affects "the safety of operation of motor vehicles weighing 10,000 pounds or less," *unless* the vehicle is "designed or used to transport more than 8 passengers (including the driver) for compensation." *Id.* at § 306(c). The district court referred to this as the "small vehicle exception" to the MCA.

On March 19, 2015, LaCurtis filed a putative collective and class action against EMT seeking to recover overtime pay he believes he and similarly situated drivers were entitled under the FLSA and Missouri law. *See* 29 U.S.C. § 216(b); Fed. R. Civ.

P. 23.  LaCurtis amended the Complaint on August 31, 2015.  LaCurtis seeks, among other things, class designation for both claims, back wages, liquidated damages, injunctive relief, and attorney fees and costs.  EMT answered, asserting several affirmative defenses.

After discovery limited to liability issues, LaCurtis and EMT filed cross-motions for summary judgment.  LaCurtis moved for partial summary judgment only on the issue of liability.  According to the district court, LaCurtis acknowledged during oral argument that his "motion applie[d] only to his individual claims" because "no class or collective action ha[d] been certified in this case."

EMT sought dismissal of the First Amended Complaint in its entirety.  The pivotal issue presented by the summary-judgment motions was whether the paralift vans at issue in this case were "designed or used to transport more than 8 passengers" for purposes of § 306 of the TCA.

LaCurtis urged the district court to defer to U.S. Department of Labor ("DOL") Field Assistance Bulletin No. 2010-2 ("FAB 2010-2"), in which the Deputy Administrator of the Wage and Hour Division ("WHD") of the DOL announced that, for enforcement purposes, the WHD will determine whether a vehicle is "designed or used to transport more than 8 passengers" "based on the vehicle's current design and the vehicle capacity as found on the door jamb plate."  The WHD stated that if the seating capacity was reduced "to accommodate a wheelchair, [the WHD] will count the resulting capacity plus add 1 for each wheelchair placement."

EMT argued the paralift vans LaCurtis drove were "designed or used to transport **more** than 8 passengers" based on their original design and as modified to accommodate two wheelchairs.  EMT urged the district court to follow NHTSA regulation 49 C.F.R. § 571.3(b)(1) and conclude that a wheelchair placement counted

as four seating positions.[4]  EMT alternatively argued it should not be liable for overtime because it had relied in good faith on the results of a 2010 FLSA compliance examination conducted by the DOL that, in EMT's view, indicated EMT's overtime policies complied with the FLSA.  *See* 29 U.S.C. §§ 251-262.

Rejecting EMT's assertion that § 571.3(b)(1) controlled the issue and giving "some deference" to FAB 2010-2, the district court concluded a wheelchair placement should count as one passenger.  As such, the district court decided LaCurtis was a "covered employee" under TCA § 306 because the paralift vans he drove, as modified, had fewer than eight seats.  The district court further decided EMT did not qualify for the good-faith exception.  Accordingly, the district court denied EMT's motion for summary judgment on May 31, 2016, and granted partial summary judgment for LaCurtis on the issue of liability.

On January 27, 2016, on EMT's motion, the district court consolidated LaCurtis's case with a related case filed by driver Kris Daniels and helper Gerald Young.  *See* Fed. R. Civ. P. 42(a).  The district court agreed with EMT that the cases arose "out of very similar facts, involve[d] the same defendant, and present[ed] common questions of law."

On July 1, 2016, EMT moved to amend the district court's May 31, 2016, summary-judgment order to permit immediate interlocutory appeal under 28 U.S.C. § 1292(b).  The district court granted the motion in part and certified two issues for interlocutory appeal: (1) whether § 571.3(b)(1) was entitled to "controlling deference in determining the number of passenger seats a wheelchair placement represents" in

---

[4]In defining the phrase "designated seating position," § 571.3(b)(1) provides, in part, "For the sole purpose of determining the classification of any vehicle sold or introduced into interstate commerce for purposes that include carrying students to and from school or related events, any location in such vehicle intended for securement of an occupied wheelchair during vehicle operation shall be regarded as four designated seating positions."

deciding if a vehicle is "designed or used to transport more than 8 passengers" under TCA § 306(c) and (2) whether vans "originally designed and manufactured to transport 12 to 15 passengers" that are "later modified by removing seats to accommodate two secured wheelchair placements and up to six ordinary seats" are "designed or used to transport more than 8 passengers" under TCA § 306(c). The district court stayed further proceedings pending this appeal.

On August 18, 2016, this Court granted EMT's motion for interlocutory appeal on the two issues the district court certified.[5] For the first time on appeal, EMT asks the Court to review the district court's rejection of EMT's good-faith defense. We decline to consider that uncertified issue on interlocutory appeal. *See* 28 U.S.C. § 1292(b).

## II. DISCUSSION

### A. Standards of Review

We review de novo the district court's interpretation of the federal statutes and regulations at issue in this appeal. *See*, *e.g.*, *Williams*, 830 F.3d at 775. We also "review de novo the district court's resolution of cross-motions for summary judgment 'viewing the evidence in the light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences.'" *Dallas v. Am. Gen. Life & Acc. Ins. Co.*, 709 F.3d 734, 736 (8th Cir. 2013) (quoting *Crawford v. Van Buren County*, 678 F.3d 666, 669 (8th Cir. 2012)). Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[5]On February 20, 2017, the drivers moved for leave to file a sur reply in this case. That motion is granted. The drivers' sur reply is deemed filed as of the date of their motion, and the Court has considered it.

## B.    Controlling Deference

The first question we must answer is whether the district court erred in failing to give controlling deference to 49 C.F.R. § 571.3(b)(1) in interpreting TCA § 306. We conclude it did not.

Where Congress has delegated authority to an agency "to elucidate a specific provision of the statute by regulation," we must give "[s]uch legislative regulations . . . controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984). "[A]dministrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001).

Here, EMT is correct that the Transportation Secretary has authority to interpret TCA § 306 and to determine whether an employee's activities fall within the MCA exemption. *See, e.g.*, *Williams*, 830 F.3d at 775-76 (discussing *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 662 (1947)). But EMT—all but abandoning this issue on appeal[6]— has not cited any authority or identified any colorable basis for giving controlling weight to § 571.3(b)(1) in this case.

As the district court pointed out, § 571.3(b)(1) was not promulgated by the Transportation Secretary or the FMCSA under the authority of the MCA or the TCA. Rather, NHTSA—a distinct agency within the DOT with no authority to administer

---

[6]The drivers credibly contend EMT has abandoned this issue. *See Etheridge v. United States*, 241 F.3d 619, 622 (8th Cir. 2001) ("Claims not argued in the briefs are deemed abandoned on appeal."). Although EMT omitted this issue from its "Statement of the Issues" and scarcely mentioned it in its brief (and then only as purported support for its original-design argument), EMT's counsel was adamant at oral argument that EMT had not abandoned this issue.

or enforce any of the statutes at issue in this case—promulgated §571.3(b)(1) under the authority of a completely different statutory scheme—the National Traffic and Motor Vehicle Safety Act of 1966. *See* 49 C.F.R. § 571.1. What's more, there is nothing in the record to indicate that either the Transportation Secretary or the FMCSA has examined the TCA and weighed in on its meaning or its possible effect on the MCA exemption at all, much less that they have clearly said the limited definition in § 571.3(b)(1) should control our interpretation of the TCA.

The district court did not err in declining to give controlling deference to § 571.3(b)(1) in deciding the drivers were "covered employees" under TCA § 306.


### C.    The Meaning of "Designed" under the TCA

We next must determine if the paralift vans LaCurtis drove for EMT, which were originally designed and manufactured to transport twelve to fifteen passengers but were redesigned and modified to accommodate two wheelchair placements and up to six ordinary seats, were "designed or used to transport more than 8 passengers (including the driver)" for purposes of TCA § 306(c). Reviewing the statutory language in the TCA and giving "some deference" to the WHD interpretation of TCA § 306 in FAB 2010-2, the district court determined the paralift vans LaCurtis operated were not "designed or used to transport more than 8 passengers." As such, the district court found LaCurtis was a "covered employee" under the TCA and entitled to overtime pay.

EMT argues that in reaching that conclusion, "the district court misinterpreted or ignored the clear statutory language of the TCA" and "erred in giving deference to" the WHD's "interpretation of the statutory language." As EMT reads it, the TCA unambiguously establishes that a vehicle's original design capacity, as fixed at the time of manufacture, controls. *See Chevron*, 467 U.S. at 842-43 (explaining that if Congress has "directly spoken to the precise question at issue . . . that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously

expressed intent of Congress"). EMT contends that by using the disjunctive phrase "designed or used" Congress made it clear that the term "designed" would mean the original design of a vehicle and the term "used" would cover anything that happens after that, including a comprehensive redesign and substantial modifications by a third-party manufacturer. We disagree.

"Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341. A "statutory provision is ambiguous" if "it is susceptible to more than one reasonable interpretation." *Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc.*, 651 F.3d 857, 862 (8th Cir. 2011).

The term "designed" is not defined in the TCA, and the statute lacks the type of "temporal qualifier" that would make the meaning of the term clear as it relates to the dispute in this case. *Robinson*, 519 U.S. at 341. Each party asserts the term unambiguously supports their position, but they propose very different interpretations of the term. Whereas EMT argues "designed" means as "originally designed," the drivers—maintaining the subsequent redesign and modification of the paralift vans constitutes a "design" under the TCA—in essence, argue "designed" means as "currently designed."

Both interpretations are reasonable. *See id.* (finding ambiguity where Congress could have expressly modified the term "employees" with the adjectives "current" or "former" but did not). EMT's proposed interpretation would provide a measure of certainty to the determination. The drivers' proposed interpretation would better account for the substantial redesign and modifications the vans undergo before being placed into service at EMT as paralift vans.

For help in resolving this ambiguity and determining Congress's intent, the parties direct us to various agency interpretations of the term "designed" in this and related contexts. Such interpretations are often very helpful, *see*, *e.g.*, *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998) ("[T]he well-reasoned views of the agencies implementing a statute 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40 (1944))), but not here. "The weight of [an agency] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore*, 323 U.S. at 140.

Here, however, the agency interpretations cited by the parties lack the power to persuade. As noted above, neither the Transportation Secretary nor the FMCSA has clearly spoken on this issue. In addition to § 571.3(b)(1), which actually cuts against EMT's original-design argument, EMT, for the first time on appeal, points to two "determinations" from the FMCSA that EMT asserts establish"that *original design* is what matters . . . and that the removal of seats is irrelevant in assessing vehicle capacity for regulatory purposes." The first is a document titled "Interstate Passenger Carrying Driver's Guide to Hours of Service." The second is reportedly a website entry answering a driver question about commercial driver licensing standards after seats are removed from a vehicle.

Even assuming those "determinations" are properly before the Court, EMT does not explain how that "guidance" was prepared or provide any evidence of thoroughness or reasoning that would give them much persuasive power. Neither "determination" appears to clearly contemplate the type of comprehensive redesign and conversion at issue in this case.

We reach the same conclusion about the persuasive value of FAB 2010-2. While it is certainly not improper to look to the DOL for guidance in interpreting

-11-

TCA § 306 as it relates to the Labor Secretary's authority to enforce the FLSA, particularly in the absence of guidance from the Transportation Secretary on the scope of the MCA exemption, *see McCall v. Disabled Am. Veterans*, 723 F.3d 962, 966 (8th Cir. 2013), we do not find FAB 2010-2 to be of much help under the circumstances of this case. In FAB 2010-2, which is an internal memorandum from the WHD Deputy Administrator to Regional Administrators and District Directors, the Deputy Administrator clarifies that for enforcement purposes, the WHD will determine whether a vehicle is designed to transport more than eight passengers

> based on the vehicle's current design and the vehicle capacity as found on the door jamb plate. Where a vehicle's seating capacity has been reduced, for example by removing seats to accommodate a wheelchair, we will count the resulting seating capacity plus add 1 for each wheelchair placement. Where a vehicle's capacity has been increased, for example by bolting a bench seat into a cargo area, we will not count the added capacity unless the vehicle has been recertified by DOT for that purpose.

Thus, FAB 2010-2 actually presents something of a hybrid. The WHD will consider current design when seats are removed and will consider original design when seats are added, unless the vehicle is recertified by the DOT by some unidentified process. Like the guidance from the FMCSA, the Deputy Administrator does not provide any explanation for the enforcement standard she adopts nor does she provide any reasoning for her novel interpretation of TCA § 306.

With little persuasive interpretive guidance, we are left to resolve the ambiguity in TCA § 306(c) based on the language and purpose of the TCA and the broader statutory context. Upon careful review, we conclude Congress did not intend for the term "designed" as used in TCA § 306(c) to be limited to a vehicle's original design no matter what happens to the vehicle after its original design and manufacture.

The paralift vans at issue in this case undisputedly underwent a comprehensive redesign and substantial modifications by a third-party manufacturer before being

delivered to EMT and placed into service.[7]  Though originally designed to carry twelve to fifteen ambulatory passengers, the vans at issue in this case went from the original manufacturer to a third-party manufacturer who redesigned them and converted them into paralift vans capable of safely transporting up to two wheelchairs.

To accommodate those wheelchairs, the third-party manufacturer removed some of the seats, altered the roof and doors, and installed wheelchair anchors, ramps, and lifts in accordance with the redesign.  When the conversion process was complete, the third-party manufacturer placed new placards on the door pillars to comply with the labeling requirements in § 571.110 S4.3 for tire and loading information.

After those substantial modifications, the paralift vans LaCurtis drove could seat no more than seven passengers.[8]  In light of the comprehensive redesign and conversion process those paralift vans underwent before being placed into service, we agree with the district court the paralift vans LaCurtis drove were not "designed or used to transport more than 8 passengers" under TCA § 306(c).  We are simply not persuaded by EMT's assertions that we must ignore the subsequent redesign and conversion of a vehicle by a subsequent manufacturer and that such comprehensive changes made by a subsequent manufacturer are covered by the concept of "use."

---

[7]The drivers concede more modest changes to a vehicle, such as the removal of seats by a final user, would not necessarily meet the definition of "designed" under the TCA.  We need not decide that fact-intensive question today.

[8]To the extent EMT argues on appeal that a wheelchair placement should count as four passengers, we see no statutory basis for construing the term "passenger" that way for purposes of TCA § 306(c).  *See Chevron*, 467 U.S. at 842-43.

## III. CONCLUSION

We affirm the judgment of the district court that EMT is liable to LaCurtis for overtime pay.

_____