# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-4045

_____

Federal Insurance Company; Zurich American Insurance Company

*Plaintiffs - Appellees*

v.

Great American Insurance Company

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 9, 2018
Filed: June 28, 2018

_____

Before GRUENDER, MELLOY, and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

This case arises from a tragic, yet avoidable, incident. At this juncture, however, there is only one dispositive legal question: Does repeatedly shooting, and encouraging others to shoot, a handgun "in the general direction" of a small lake in a residential area of Kansas City, Missouri, which results in a young child's death, qualify as "gross negligence"? We believe it does. For this reason, we vacate the judgment of the district court and remand for further consideration.

# I.

Whispering Lake Limited Partnership owned an apartment complex in a residential area of Kansas City, Missouri. Yarco Company, Inc., managed apartment complexes for others. Whispering Lake and Yarco entered into a contract, the "Management Agreement," where Yarco agreed to manage Whispering Lake's apartment complex.

Under the Management Agreement, Whispering Lake appointed Yarco as the "exclusive agent for the management of the [apartment complex]." The agreement also included indemnity provisions (the "Indemnity Clause"), allocating liability between Whispering Lake and Yarco depending on the type of liability:

(a)     Except for fraud, willful misconduct or gross negligence on the part of [Yarco], [Whispering Lake] shall hold and save [Yarco] (and [Yarco]'s directors, officers, employees, shareholders, partners and affiliates) free and harmless from any claim, cause, proceeding, or suit arising out of, or in connection with, any actions by [Yarco] in accordance with this Agreement or acting under the express or implied direction of [Whispering Lake]. Subject to the same exceptions, [Whispering Lake] shall reimburse [Yarco], upon demand, for all costs and expenses (including reasonable attorneys' fees) and for any monies which [Yarco] is required to pay in connection therewith or shall, if requested in writing by [Yarco], defend promptly and diligently, at the sole expense of [Whispering Lake], any claim, action or proceeding against [Yarco] which arises out of, or in connection with, the foregoing.

(b)     [Yarco] shall assume sole responsibility for and hold and save [Whispering Lake] free and harmless from any claim, cause or proceeding or suit and any costs or expenses incurred by [Whispering Lake] arising out of, or in connection with, any fraud, gross negligence or willful misconduct on the part of [Yarco] or any of its employees or affiliates. [Yarco] shall reimburse [Whispering Lake] upon demand for all costs and expenses (including reasonable attorneys' fees) and for any

monies which [Whispering Lake] is required to pay in connection therewith or shall, if requested in writing by [Whispering Lake], defend promptly and diligently, at the sole expense of [Yarco], any claim, action or proceeding against [Whispering Lake] which arises out of, or in connection with, the foregoing.

Whispering Lake and Yarco each acquired insurance policies covering commercial liability. Each acquired a "primary" policy and an "excess" or "umbrella" policy, extending coverage to itself and certain others. Whispering Lake acquired a primary insurance policy with Indian Harbor Insurance Co. and an umbrella policy with Great American Insurance Co. The Indian Harbor policy provided $1 million in coverage,[1] and the Great American policy provided $10 million in coverage. Similarly, Yarco acquired a primary policy with Zurich American Insurance Co. and an umbrella policy with Federal Insurance Co. The Zurich policy provided $1 million in coverage, and the Federal policy provided $25 million in coverage.

The incident giving rise to this case occurred on Independence Day, July 4, 2011. On that day, Yarco's employee, Aaron Sullivan, worked at the apartment complex's pool as a "pool monitor." In this role, Sullivan had a "responsibility to watch over the pool area and to take steps to keep a peaceful area around the pool." During his shift, Sullivan retrieved a handgun. To supposedly "celebrate" Independence Day, Sullivan proceeded to shoot the handgun an unknown number of times. He also allowed other individuals to shoot the handgun numerous times. Sullivan instructed those individuals to direct their shots "away from the pool [and] in the general direction of [a] lake" bordering the apartment complex's property. This property, again, was located in a residential area of Kansas City. One of the bullets

---

[1]Indian Harbor and its policy are not at issue on appeal because Indian Harbor contributed its policy limits to the settlement and did not contest liability.

traveled across the lake and struck an eleven-year-old girl in the neck, shattering a cervical vertebra and damaging her spinal cord. The girl died the next day.

The State of Missouri later charged Sullivan (but not the others) for the incident. Sullivan pleaded guilty to Involuntary Manslaughter in the First Degree (Reckless Killing), Mo. Rev. Stat. § 565.024.

The girl's mother brought a wrongful-death lawsuit against Sullivan and Yarco. The insurers stepped in, based on their duties to defend their insureds. The parties eventually settled the suit for a confidential amount. Each of the insurers paid a part of the settlement, but each reserved its rights to litigate its respective obligation for the settlement.

Federal then filed this action in federal district court, seeking a declaratory judgment determining the parties' obligations and any priority of coverage. Zurich filed a claim as well, and the court eventually realigned the parties (with Federal and Zurich as plaintiffs and Great American as the defendant). Federal and Zurich filed motions for summary judgment on their claims against Great American. Great American filed cross-motions for summary judgment on Federal's and Zurich's claims. The district court entered an order (and then a judgment), granting Federal's and Zurich's motions and denying Great American's cross-motions. The court held that Great American was obligated to reimburse Federal and Zurich for the amounts they contributed to the settlement because Yarco's employee Sullivan was not grossly negligent. The court then issued an amended judgment, denominating the monetary amounts and interest. Great American timely appealed.

## II.

On appeal, Great American raises several challenges. Great American first asserts that the district court incorrectly concluded that the Management Agreement's

Indemnity Clause required Whispering Lake to indemnify Yarco. Great American argues that Sullivan's conduct qualified as "gross negligence" and that the Indemnity Clause exempted Whispering Lake from liability for claims arising out of gross negligence. For this reason, Great American claims, it did not have a duty (as Whispering Lake's insurer) to indemnify Federal or Zurich (as Yarco's insurers). Great American then challenges several other legal conclusions from the district court's order. We do not address those other challenges, however, because we decide this appeal on the basis of Great American's "gross negligence" challenge.

"We . . . review de novo the district court's resolution of cross-motions for summary judgment viewing the evidence in the light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences." LaCurtis v. Express Med. Transporters, Inc., 856 F.3d 571, 576 (8th Cir. 2017) (citation omitted). "Summary judgment is required 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Id. at 576–77 (quoting Fed. R. Civ. P. 56(a)). Here, the parties agreed at oral argument that there is no genuine dispute of material fact.[2] "Summary judgment is therefore proper if either party is entitled to judgment as a matter of law." State Farm Fire & Cas. Co. v. Nat'l Reseach Ctr. for Coll. & Univ. Admissions, 445 F.3d 1100, 1102 (8th Cir. 2006).

As a federal court with diversity jurisdiction, we apply state substantive law. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). The parties agree that Missouri law applies to our interpretation of the governing contracts—i.e., the three insurance policies, the Management Agreement, and the Indemnity Clause. We review de novo

---

[2]Although Great American claimed at oral argument that the inferences from those undisputed facts could be viewed differently, that contention is not relevant for our review of cross-motions for summary judgment. We must view any inferences in favor of the nonmovant. See LaCurtis, 856 F.3d at 576.

the district court's interpretation of a provision in an insurance policy. See State Farm, 445 F.3d at 1102.

A.

As indicated above, the first and main issue on appeal is whether Sullivan's conduct qualified as "gross negligence" under the Indemnity Clause. Great American argues that Sullivan's conduct qualified as gross negligence and therefore its insured, Whispering Lake, did not have a duty to indemnify Yarco. The district court rejected Great American's argument as "based on opinion and supposition." The court further found, "Sullivan [had] testified that he was actually trying to *avoid* injuries by shooting into the lake," though the court relied on testimony outside the underlying pleadings. Based on this conclusion, the district court held that the Indemnity Clause obligated Great American (standing in the shoes of Whispering Lake) to indemnify Federal and Zurich (standing in the shoes of Yarco).

The parties first dispute what evidence a court may consider in determining liability among the insurers for a settlement agreement. Federal and Zurich argue that a court may consider *only* the underlying pleadings of the settled action.[3] Great American, on the other hand, claims that the court also may consider extrinsic evidence not included in the underlying pleadings.

In fact, Great American contends that Sullivan's conviction for Reckless Killing is binding as a matter of collateral estoppel, based on James v. Paul, 49

---

[3]As a preliminary matter, Federal and Zurich contend that, in considering the underlying wrongful-death petition, we may consider only the petition's *legal claims*. This argument belies well-established precedent. Numerous cases interpreting Missouri law have concluded that a court, in determining insurance coverage, compares the underlying *factual allegations* with an insurance policy's terms. See, e.g., Stein v. State Farm Fire & Cas. Co., 120 F.3d 909, 910 (8th Cir. 1997).

S.W.3d 678 (Mo. banc 2001).  Before applying collateral estoppel under Missouri law, a court must consider:

> (1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom estoppel is asserted was a party or was in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.

Id. at 682.  "Each case must be analyzed on its own facts."  Id. at 683.  And "[t]he doctrine of collateral estoppel will not be applied where to do so would be inequitable."  Id.

In James, the Missouri Supreme Court applied collateral estoppel based on a scheme between a tortfeasor and a victim to bilk the tortfeasor's insurer.  There, after the tortfeasor discovered his wife, with whom he was separated, engaging in sexual relations with the victim, the tortfeasor thrice stabbed the victim.  Id. at 680.  The tortfeasor pleaded guilty to first-degree assault and admitted at his plea hearing to stabbing the victim.  Id.  The tortfeasor and the victim then engaged in "collusive litigation," id. at 688, by agreeing to a settlement agreement "designed to shift the bulk of any assessment of damages to [the tortfeasor's] insurer while minimizing his personal exposure to damages," id. at 689.  The victim and the tortfeasor structured their settlement so as to circumvent a provision in the tortfeasor's insurance policy excluding insurance coverage for *intentional* bodily injuries.  Id. at 681.  The tortfeasor thus agreed not to contest the victim's personal-injury action against the tortfeasor, and the victim framed the action so as to obtain a fact-finding that the tortfeasor's conduct was *unintentional* (based on mental disorders and alcoholism).  Id. at 681.  After obtaining a judgment against the tortfeasor based on this fact-finding, the victim brought a garnishment action against the tortfeasor's insurer (and

the tortfeasor). Id. The insured responded that the tortfeasor's guilty plea collaterally estopped the victim from re-litigating whether the tortfeasor's conduct was intentional (and, thus, whether the insurance policy excluded coverage for the stabbing). Id. at 682. The Missouri Supreme Court agreed, concluding that collateral estoppel applied based on equitable considerations. The court reasoned, "Both [the victim] and [the tortfeasor] stood to profit from [the tortfeasor]'s duplicity in admitting intentional wrongdoing in the criminal proceeding while, in effect, denying it in the [personal-injury action]. Applying collateral estoppel in this [garnishment action] serves to prevent the potential of collusive litigation as well as promoting the other policies of finality, consistency and judicial economy . . . ." Id. at 688 (footnote omitted).

James, however, differs from this case. Here, unlike in James, there was no collusive litigation between the alleged tortfeasors (i.e., Sullivan, Yarco, and Whispering Lake) and the victim (i.e., the young girl's estate). Also, even assuming Sullivan's criminal conduct and the interpretation of the term "gross negligence" are identical issues, we believe it would be inequitable for Great American to use collateral estoppel against Federal and Zurich—neither of which were parties in Sullivan's criminal proceeding, nor were they involved in a litigation scheme like the victim in James. Applying collateral estoppel in this case would be inequitable, and we therefore decline to do so.

Nevertheless, we conclude that, in determining insurance coverage, we may consider Sullivan's criminal conviction because that fact was finally determined through a proper adjudication. This Court previously concluded that under Missouri law, "in deciding whether losses suffered are covered by a liability policy, courts look to the allegations in the underlying complaint and compare them to the language in the insurance policy." Stein, 120 F.3d at 910. The Missouri Supreme Court subsequently declared, "The duty to indemnify is determined by the facts as they are established at trial or as they are *finally determined* by some other means, for example through summary judgment or settlement." McCormack Baron Mgmt. Servs., Inc.

-8-

v. Am. Guar. & Liab. Ins., 989 S.W.2d 168, 173 (Mo. banc 1999) (emphasis added); see also Arch Ins. v. Sunset Fin. Servs., Inc., 475 S.W.3d 730, 734 (Mo. Ct. App. 2015) ("[T]he duty to indemnify is determined by reading the petition in the light of information learned later. If the relevant testimony at the hearing contradicts or *adds facts* necessarily indicating the absence of coverage, then the insurer will have no duty to indemnify the insured." (citation omitted)). Because Sullivan's criminal conduct was "finally determined" through the criminal proceeding in state court, we conclude that it is appropriate to consider his conviction for Reckless Killing.

We now turn to the contractual language at issue. The Indemnity Clause provided that Whispering Lake would indemnify Yarco for "any claim, cause, proceeding, or suit," except those for, among other types, "gross negligence." Relatedly, the Indemnity Clause obligated Yarco to indemnify Whispering Lake for "any claim, cause or proceeding or suit and any costs or expenses . . . arising out of, or in connection with any . . . gross negligence."

Under Missouri law, "the primary rule of [contractual] construction is that the intention of the parties shall govern." Andes v. Albano, 853 S.W.2d 936, 941 (Mo. banc 1993). Neither the Management Agreement nor the Indemnity Clause defined "gross negligence." When a contract governed by Missouri law does not define an unambiguous term, we must ascertain that term's plain, ordinary meaning. See Shaw Hofstra & Assocs. v. Ladco Dev., Inc., 673 F.3d 819, 825 (8th Cir. 2012). Helpful here, Black's Law Dictionary defines the term "gross negligence" as: "1. A lack of slight diligence or care. 2. A conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party, who may typically recover exemplary damages. . . . 3. See *criminal negligence*." Black's Law Dictionary 1134 (9th ed. 2009) (citations omitted). "Criminal negligence" is then defined as "[g]ross negligence so extreme that it is punishable as a crime. For example, involuntary manslaughter or other negligent homicide can be based on criminal negligence." Id.

-9-

We think this definition aptly describes the incident here. Even considering only the underlying pleadings and Sullivan's conviction for Reckless Killing, Sullivan's conduct constituted gross negligence. While serving as an employee at the property that day, Sullivan fired his handgun an unknown number of times to "celebrate" Independence Day. Sullivan not only allowed others to fire his handgun, but also encouraged them to do so. And Sullivan and the others repeatedly shot the handgun in a populated, residential area of Kansas City, Missouri. Based on Sullivan's decisions and actions, a bullet struck and killed an eleven-year-old child. Federal and Zurich contend that Sullivan's act directing the others to shoot the handgun "away from the pool [and] in the general direction of the lake"[4] was conduct "promoting safety" (as they describe it), rather than conduct of gross negligence. This contention is wholly without merit, for the reasons just expressed. Also, any diligence Sullivan exercised for the benefit of persons at the pool is immaterial here to his duty to persons in or around the lake. And, contrary to Zurich's perspective, Sullivan's conduct was in no way *simple* negligence. See Wilson v. Progressive Waste Sols. of Mo, Inc., 515 S.W.3d 804, 809 (Mo. Ct. App. 2017) (stating that a trash collector committed only "simple negligence" when he "inadvertently" hit a light pole and swiped a wall with his truck, despite "driving cautiously to avoid hitting children" and "carefully navigating" around obstacles); Yellow Freight Sys. v. Thomas, 987 S.W.2d 1, 2 & 4 (Mo. Ct. App. 1998) (stating that a truck driver committed only "simple negligence" when his truck struck a stopped bus because the sun's reflection prevented the driver from seeing the bus's break lights and because poor road conditions caused the truck to slide).

---

[4]Despite Federal's and Zurich's protestations that we may consider only the underlying pleadings, they repeatedly mischaracterize the factual allegations in those pleadings. Whereas the underlying wrongful-death petition alleged that Sullivan directed the others to shoot the handgun "in the *general direction* of the lake," (emphasis added), Federal and Zurich repeatedly state that Sullivan directed the others to shoot "*into* the lake" (emphasis added).

-10-

Sullivan's conduct, we conclude, was a "conscious, voluntary act . . . in reckless disregard of a legal duty and of the consequences to another party." Black's Law Dictionary 1134. Moreover, based on his conduct, Sullivan was convicted of Reckless Killing. See Mo. Rev. Stat. § 565.024. This conviction, demonstrating "criminal negligence," further supports our conclusion that his conduct qualified as "gross negligence," as understood under the Indemnity Clause. See State v. Thomas, 161 S.W.3d 377, 381 (Mo. banc 2005) ("The relevant mental state for involuntary manslaughter is acting 'recklessly,' which is to 'consciously disregard[] a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.'" (alteration in original) (quoting Mo. Rev. Stat. § 562.016.4)).

Federal and Zurich next contend that, even assuming Sullivan's conduct constituted "gross negligence," the Indemnity Clause did not cover the wrongful-death petition's independent claims against Yarco for negligence. But this argument contradicts the contractual terms. Under the Indemnity Clause, Yarco agreed to indemnify Whispering Lake "from *any claim, cause or proceeding or suit and any costs or expenses* incurred by [Whispering Lake] *arising out of, or in connection with,* any . . . gross negligence . . . on the part of [Yarco] or any of its employees or affiliates" (emphases added). This broad language required Yarco to indemnify Whispering Lake for any claims or costs arising from a Yarco employee's gross negligence; this provision did not divide liability between the parties based on the underlying action's formulation of the claims. The costs from the settlement here clearly arose out of, or were in connection with, Sullivan's gross negligence. The Indemnity Clause therefore obligated Yarco to indemnify Whispering Lake for any claims or costs arising from Sullivan's gross negligence.

Because Sullivan's conduct was "gross negligence," Whispering Lake did not have an obligation under the Indemnity Clause to indemnify Yarco or Sullivan for the settlement. Similarly, Yarco had an obligation to indemnify Whispering Lake for "any costs or expenses . . . arising out of, or in connection with," Sullivan's gross negligence. As such, the district court erred in relying on the Indemnity Clause to require Whispering Lake's insurer (Great American) to indemnify Yarco's insurers (Federal and Zurich). Because the district court erred in relying on this erroneous legal conclusion when granting Federal's and Zurich's motions for summary judgment and in denying Great American's cross-motions for summary judgment, we vacate the district court's judgment.

B.

The question remains: Who is liable for the settlement amount? Great American claims that the terms of the applicable insurance policies—i.e., the policies issued by Great American, Federal, and Zurich—set the priority of coverage. This is the general rule under Missouri law. See Fed. Ins. v. Gulf Ins., 162 S.W.3d 160, 164 (Mo. Ct. App. 2005). Federal and Zurich, on the other hand, assert that the Indemnity Clause allocated liability to either Whispering Lake's or Yarco's "tower of insurance coverage." Stated otherwise, Yarco's insurers (Federal and Zurich) would indemnify Whispering Lake's insurer (Great American)—or vice versa—depending on which insured was liable under the Indemnity Clause. For this assertion, Federal and Zurich rely on the Missouri Court of Appeals's decision in Federal Insurance v. Gulf Insurance, 162 S.W.3d at 164–68, and this Circuit's decision in Wal–Mart Stores, Inc. v. RLI Insurance, 292 F.3d 583, 587–95 (8th Cir. 2002). See also St. Paul Fire & Marine Ins. v. Am. Int'l Specialty Lines Ins., 365 F.3d 263, 268–73 (4th Cir. 2004) (applying Virginia law). This is an exception to the general rule that the insurance policies' terms determine priority of coverage. Under this exception, an indemnity clause—rather than insurance policies—determines the

insurers' liability, in certain circumstances. The above cases identified several factors to analyze before a court may apply this exception.

Based on the district court's erroneous conclusion that the Indemnity Clause obligated Whispering Lake to indemnify Yarco, the court did not analyze these remaining issues regarding liability. Specifically, the court did not discuss whether the priority of coverage was governed by the insurance policies or the Indemnity Clause. Assuming the general rule applies, the district court did not discuss or determine whether the Federal policy or the Great American policy (i.e., the two "umbrella" policies") were "mutually repugnant" or whether one was "excess" to the other. See Fed. Ins., 162 S.W.3d at 164 (citing cases). And, assuming the Wal–Mart and Federal Insurance exception applies, the district court neither mentioned these cases nor analyzed the relevant factors. See id. at 166–68.

Because the district court did not address these arguments and because "we would benefit from having the District Court decide the[se] issue[s] in the first instance," Schweiss v. Chrysler Motors Corp., 922 F.2d 473, 476 (8th Cir. 1990), we decline to address them on appeal. We therefore remand to the district court to determine whether the insurers' priority of coverage is determined by the insurance policies' terms or by the Indemnity Clause.[5]

_____

[5]In its reply brief, Great American clarifies the scope of its challenge to the district court's conclusion that Sullivan was an "insured" under the Great American insurance policy issued to Whispering Lake. Great American declares that this issue is relevant only to the determination of whether the Federal Insurance exception applies (specifically, the exception's circuitous-litigation factor). Because we remand to the district court to determine whether the exception applies (or whether the insurance polices' terms establish priority of coverage), we similarly decline to address whether Sullivan's insured status under the Great American policy would lead to circuitous litigation.

## III.

For these reasons, the judgment of the district court is vacated and remanded for further consideration.

_____