# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2164
_____

Brands International Corporation

*Plaintiff - Appellee*

v.

Reach Companies, LLC

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: March 12, 2024
Filed: May 30, 2024
_____

Before GRUENDER, SHEPHERD, and GRASZ, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Reach Companies, LLC, a Minnesota retail distributor, appeals the district court's grant of summary judgment and award of attorney's fees to Brands International Corporation, a Canadian manufacturer of hand sanitizer, in a contract dispute arising out of COVID-era hand sanitizer purchases. We affirm the grant of summary judgment but reverse the award of attorney's fees.

# I.

In 2020, Reach contracted with Brands for 1,000,000 bottles of hand sanitizer to be delivered directly by Brands to Reach's customer, Five Below. Reach submitted a purchase order to Brands that listed the amount of hand sanitizer purchased and the per-unit cost—500,000 6-ounce bottles of hand sanitizer at $0.69 per bottle and 500,000 2-ounce bottles of hand sanitizer at $0.44 per bottle. The parties agreed to "cash on delivery" terms.

Brands began shipping hand sanitizer to individual Five Below stores on March 11. Brands made three deliveries totaling 122,112 6-ounce bottles and 10,944 2-ounce bottles, all of which were accepted by Five Below. Brands informed Reach of the deliveries, and Five Below paid Reach for the hand sanitizer, but Reach did not pay Brands. As a result of Reach's failure to pay, on March 16 or 17, Brands informed Reach that it would no longer deliver hand sanitizer to Five Below on Reach's behalf. Brands then invoiced Reach for $89,072.64, the contract price for the delivered hand sanitizer. Reach still did not pay and ceased communicating with Brands. Brands sent follow-up requests for payment throughout the month of April.

Brands then filed suit against Reach for breach of contract, unjust enrichment, account stated, and unpaid goods and services. Reach counterclaimed for, as relevant here, breach of contract. The parties cross-moved for summary judgment on their contract claims. They disagreed on the applicable law: Brands asserted that the U.N. Convention on Contracts for the International Sale of Goods, Apr. 11, 1980, S. Treaty Doc. No. 98-9, 1489 U.N.T.S. 3 (hereinafter "CISG"), applied, while Reach asserted that Minnesota law applied.

The district court determined that the CISG governed and that Reach had breached the contract. The district court thus granted summary judgment to Brands on the parties' competing breach-of-contract claims, granted summary judgment to Reach on Brands's unjust-enrichment and account-stated claims, dismissed all other claims, and awarded Brands $89,072.64. The district court also found that the CISG

-2-

authorized the award of attorney's fees and so awarded Brands $185,000 in attorney's fees. Reach appeals.

## II.

We review *de novo* the district court's resolution of cross-motions for summary judgment, viewing the evidence in the light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences. *Fed. Ins. Co. v. Great Am. Ins. Co.*, 893 F.3d 1098, 1102 (8th Cir. 2018). "Summary judgment is required if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted).

## A.

Reach and Brands first dispute what substantive law governs—Minnesota law or the CISG. We review *de novo* both choice-of-law determinations and questions of treaty interpretation and application. *C.H. Robinson Worldwide, Inc. v. Traffic Tech, Inc.*, 60 F.4th 1144, 1148 (8th Cir. 2023), *cert. denied*, 144 S. Ct. 190 (2023) (choice of law); *United States v. Lomeli*, 596 F.3d 496, 499 (8th Cir. 2010) (treaty interpretation).

However, a choice-of-law analysis is unnecessary here because the CISG is "incorporated federal law" that "governs the dispute so long as the parties have not elected to exclude its application." *BP Oil Int'l, Ltd. v. Empresa Estatal Petroleos de Ecuador*, 332 F.3d 333, 337 (5th Cir. 2003); *see* 28 U.S.C. § 1652 ("The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply."). The CISG is an international treaty that "applies to contracts of sale of goods between parties whose places of business are in different States . . . when the States are Contracting States." CISG, art. 1(1)(a). Both the United States and Canada are

"Contracting States." *See Chateau des Charmes Wines Ltd. v. Sabate USA Inc.*, 328 F.3d 528, 530 (9th Cir. 2003). Parties may opt out of the CISG under article 6 of the treaty, but they must do so expressly. *See BP Oil Int'l, Ltd.*, 332 F.3d at 337 ("Where parties seek to apply a signatory's domestic law in lieu of the CISG, they must affirmatively opt-out of the CISG."). That did not happen here.

Thus, the CISG governs this claim in the absence of an express, affirmative opt-out. Because Brands and Reach did not expressly disclaim the CISG, both are citizens of different Contracting States, and the contract at issue involves the sale of goods, the CISG governs.

B.

We now apply the CISG to the case at hand. "In applying the [CISG], we look to the language of its provisions and the 'general principles on which it is based.'" *Dingxi Longhai Dairy, Ltd. v. Becwood Tech. Grp. L.L.C.*, 635 F.3d 1106, 1107 (8th Cir. 2011) (quoting CISG, art. 7(2)); *see Abbott v. Abbott,* 560 U.S. 1, 10 (2010) ("The interpretation of a treaty, like the interpretation of a statute, begins with its text."). "Caselaw interpreting analogous provisions of Article 2 [of the Uniform Commercial Code ("UCC")] may also inform a court where the language of the relevant CISG provisions tracks that of the UCC." *Dingxi Longhai Dairy, Ltd.*, 635 F.3d at 1107. "With regard to pleading requirements, the [CISG's] structure confirms what common sense (and the common law) dictate as the universal elements of a breach-of-contract action: formation, performance, breach and damages." *Id.* at 1108 (internal quotation marks omitted).

Under the CISG, "[i]f the buyer fails to perform any of his obligations under the contract or this Convention, the seller may . . . exercise the rights provided in articles 62 to 65" and "claim damages as provided in articles 74 to 77." CISG, art. 61(1). One of those rights is the right to "declare the contract avoided"—that is, cancel the contract—"if the buyer does not, within the additional period of time fixed by the seller in accordance with paragraph (1) of article 63, perform his obligation

-4-

to pay the price . . . ." CISG, art. 64(1)(b); *Avoid*, Black's Law Dictionary (11th ed. 2019) ("To render void[.]").  If the buyer does not pay, "[t]he seller may fix an additional period of time of reasonable length for performance by the buyer of his obligations."  CISG, art. 63(1).  And because "[t]he buyer must pay the price on the date fixed by or determinable from the contract . . . without the need for any request or compliance with any formality on the part of the seller," CISG, art. 59, "[t]he buyer's obligation to pay the price includes taking such steps and complying with such formalities as may be required under the contract or any laws and regulations to enable payment to be made," CISG, art. 54.

Reach and Brands agree that a valid contract exists.  Reach acknowledges that the contract was for cash on delivery, and that cash on delivery "means that payment is expected upon delivery of a product."  Appellant's Br. 23; *see also C.O.D.*, Black's Law Dictionary (11th ed. 2019) ("By consenting to this delivery term, the buyer agrees to pay simultaneously with delivery . . . .").  Reach further acknowledges that it did not pay Brands upon Brands's delivery of the hand sanitizer to Five Below.  This would appear to be a straightforward admission of breach.  However, Reach contends that Brands sending an invoice to Reach was an implied condition of the contract that must be met before its duty to pay was triggered.  This implied condition allegedly existed because Brands had not provided Reach with instructions as to how to remit payment and Reach did not know how much money it owed Brands.  Thus, Reach contends, it had not breached the contract at the time Brands refused to continue deliveries to Five Below because Reach's duty to pay had not yet been triggered by delivery of an invoice from Brands.

Reach's argument falls flat.  Even if it did not know how much to pay Brands, the contract was still for cash on delivery, and Reach had an obligation to "pay the price on the date fixed by or determinable from the contract . . . without the need for any request or compliance with any formality," such as the delivery of an invoice, "on the part of [Brands]." *See* CISG, art. 59.  Moreover, Reach was in possession of the bills of lading, which provided the number of units of hand sanitizer delivered, and the parties' purchase agreement, which specified the amount to be paid per unit.

As the district court noted, determining at least roughly how much to pay Brands was a matter of "simple arithmetic." And, even if we were to credit both Reach's argument that it did not know how much to pay Brands and Reach's argument that it needed instructions as to how to remit payment, "[Reach's] obligation to pay the price include[d] taking such steps and complying with such formalities as may be required under the contract . . . to enable payment to be made," such as reaching out to Brands to request confirmation of the payment amount and instructions as to how Reach should remit payment. *See* CISG, art. 54. Indeed, Reach does not allege that it attempted in any way to pay Brands, either on the date payment was due or thereafter.

Thus, Brands "may declare the contract avoided" because of Reach's failure to pay, since "the buyer [did] not . . . perform his obligation to pay the price." CISG, art. 64(1)(b).[1] Brands was further entitled to recover damages based on Reach's breach of the contract consisting of "a sum equal to the loss, including loss of profit, suffered by [Brands] as a consequence of the breach": here, $89,072.64—the never-paid contract price for the delivered hand sanitizer. CISG, art. 74.

The parties' contract was for cash on delivery. Reach did not pay upon delivery and so was in breach. The district court did not err in granting summary judgment for Brands.

---

[1]Although article 64(1)(b) states that the seller may void the contract if the buyer does not pay "within the additional period of time fixed by the seller in accordance with paragraph (1) of article 63," article 63 states merely that "[t]he seller *may* fix an additional period of time of reasonable length for performance by the buyer of his obligations"; it does not require the seller to do so. CISG, art. 63 (emphasis added). Moreover, Reach was obligated to pay Brands beginning on March 11, and Brands did not void the contract until March 16 or 17, so Brands arguably did provide such a period.

C.

The final question is whether the district court erred in awarding attorney's fees to Brands. "We review *de novo* the legal issues related to the award of attorney's fees and costs and review for abuse of discretion the actual award of attorney's fees and costs." *Ludlow v. BNSF Ry. Co.*, 788 F.3d 794, 803 (8th Cir. 2015). Reach and Brands agree that the CISG governs the question of attorney's fees, but they dispute the substantive question of whether the CISG authorizes an award of attorney's fees. They also dispute whether Brands needed to plead a request for attorney's fees. *See Tipton v. Mill Creek Gravel, Inc.*, 373 F.3d 913, 923 n.10 (8th Cir. 2004) ("Courts have held attorney fees to be special damages [that must be pleaded] primarily in instances when available under a contract between the parties.").[2] The availability of attorney's fees under the CISG is an issue of first

---

[2]Despite *Tipton*, we decline to decide this matter on the pleading question. Even if we assume that Brands was required to plead a request for attorney's fees as special damages under Rule 9(g), we have already concluded that an award of unpleaded special damages does not violate Rule 9(g) where the prevailing party had "filed a document three weeks before trial that explicitly notified [the losing party] of his intention to seek [the unpleaded] damages." *Bowles v. Osmose Utils. Servs., Inc.*, 443 F.3d 671, 675 (8th Cir. 2006). This is because "the object of the rule is to guard against unfair surprise and . . . that object is fully satisfied" where the losing party had "adequate time to conform its defense to the [prevailing party's] announced objectives." *Id.*; *see* Fed. R. Civ. P. 54(c) ("Every [non-default] final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."); *Cooper v. Gen. Am. Life Ins. Co.*, 827 F.3d 729, 732 (8th Cir. 2016) (concluding that Rule 54(c) reaches its "limits" where "the failure to ask for particular relief so prejudiced the opposing party that it would be unjust to grant such relief"). We have found that a party provides insufficient notice of its intent to seek special damages in the summary judgment context when it first raises the argument in a reply brief. *See Cooper*, 827 F.3d at 732. Here, Brands's amended disclosures put Reach on notice that Brands would seek attorney's fees under the CISG over six weeks before Reach deposed Brands's owner and general manager and seven weeks before the parties cross-moved for summary judgment. It seems likely that Reach had adequate time to "conform its defense to [Brands's] announced objectives."

impression in this circuit. Only one circuit has spoken to the issue—the Seventh, in *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co.*, 313 F.3d 385, 388-89 (7th Cir. 2002), which held that attorney's fees are not recoverable under the CISG.

We determine *de novo* whether the CISG authorizes a grant of attorney's fees. *See Lomeli*, 596 F.3d at 499. As in Part II.B, we analyze the CISG as we would a statute. *See Abbott,* 560 U.S. at 10. Additionally, the CISG itself provides us with two extra interpretive guidelines. When confronting "[q]uestions concerning matters governed by this Convention which are not expressly settled in it," we must settle the question "in conformity with the general principles on which [the CISG] is based." CISG, art. 7(2). And we must give "regard" to the CISG's "international character and to the need to promote uniformity in its application and the observance of good faith in international trade." CISG, art. 7(1). Additionally, recall that "[c]aselaw interpreting analogous provisions of Article 2 [of the UCC] may also inform a court where the language of the relevant CISG provisions tracks that of the UCC." *Dingxi Longhai Dairy, Ltd.*, 635 F.3d at 1107. With these principles in mind, we consider first the CISG's text, then similar UCC provisions, and finally whether our interpretation will disturb uniformity in the CISG's international application.

We begin with "the language of [the CISG's] provisions and the 'general principles on which it is based.'" *Dingxi Longhai Dairy, Ltd.*, 635 F.3d at 1107 (quoting CISG, art. 7(2)). Brands argues that attorney's fees are authorized by article 74 of the CISG. However, article 74 does not explicitly mention attorney's fees. Instead, it lays out the scope of recoverable damages in a breach-of-contract action:

> Damages for breach of contract by one party consist of a sum equal to the loss, including loss of profit, suffered by the other party as a consequence of the breach. Such damages may not exceed the loss which the party in breach foresaw or ought to have foreseen at the time of the conclusion of the contract, in the light of the facts and matters of which he then knew or ought to have known, as a possible consequence of the breach of contract.

CISG, art. 74.  Brands argues that this language is broad enough to encompass attorney's fees because the expense of hiring an attorney is part of the "loss . . . suffered by the other party as a consequence of the breach."  Moreover, article 74 "is designed to place the aggrieved party in as good a position as if the other party had properly performed the contract," *Delchi Carrier SpA v. Rotorex Corp.*, 71 F.3d 1024, 1029 (2d Cir. 1995) (internal quotation marks omitted), and the prevailing party would not have had to pay attorney's fees had the contract been properly performed.  Finally, Brands also argues that, in light of the CISG's admonishment to give "regard . . . to its international character and to the need to promote uniformity in its application," CISG, art. 7(1), we must credit that many Contracting States to the CISG award attorney's fees to the prevailing party as a matter of course.

However, because attorney's fees are allegedly "governed by [the CISG]" yet "not expressly settled in it," we must conform our analysis to "the general principles on which [the CISG] is based."  CISG, art. 7(2).  This is similar to our responsibility, "[w]hen engaging in statutory interpretation," to "read and construe the statute as a whole, giving effect wherever possible to all of its provisions, and interpreting each section in light of the surrounding sections to avoid conflicting interpretations." *Minnesota ex rel. N. Pac. Ctr., Inc. v. BNSF Ry. Co.*, 686 F.3d 567, 572 (8th Cir. 2012).  And as the Seventh Circuit noted in *Zapata*, holding that article 74 awards attorney's fees would produce a strange result: although a prevailing plaintiff would always be entitled to an award of attorney's fees, a prevailing defendant could never recover them, since there would be no breach of contract and thus article 74 would not apply.  *See* 313 F.3d at 388-89.  Such an interpretation would do violence to the CISG's principle of equality between contractual counterparties.  The CISG articles laying out the rights of buyers and sellers—contractual counterparties—in the event of breach are almost entirely mirror images of each other, conferring on each party almost identical rights.  Holding that "loss" in article 74 includes attorney's fees would require us to ignore this carefully constructed equality, creating a "conflicting interpretation" of the relationship between contractual counterparties in the event of a breach.  Such an interpretation runs up against article 7(2)'s charge to interpret

issues not expressly settled by the CISG "in conformity with the general principles on which it is based."

Reference to similar UCC provisions further clarifies that article 74 does not authorize an award of attorney's fees. *See Dingxi Longhai Dairy, Ltd.*, 635 F.3d at 1107. The UCC provisions equivalent to article 74 are sections 2-710 and 2-715, which state respectively that incidental damages "to an aggrieved seller include any commercially reasonable charges, expenses, or commissions . . . otherwise resulting from the breach," UCC § 2-710, and that incidental damages to an aggrieved buyer "include . . . any other reasonable expense incident to the delay or other breach," UCC § 2-715(1). Like article 74, this language is arguably broad enough to encompass attorney's fees. However, courts have consistently rejected such an interpretation. *See, e.g.*, *Bill's Coal Co. v. Bd. of Pub. Utilities of Springfield*, 887 F.2d 242, 246 (10th Cir. 1989) ("The trial court did not err in finding litigation costs and accounting fees not recoverable under section 2-710. Such expenses are not incidental damages under section 2-710."); *Olbrys v. Peterson Boat Works, Inc.*, 81 F.3d 161 at *5 (6th Cir. 1996) (unpublished table decision) (collecting cases) ("[D]ecisions of the highest courts of other jurisdictions . . . have interpreted this same section of the Uniform Commercial Code and have found that attorney fees are not included as incidental damages."); *E. Girard Sav. Ass'n v. Citizens Nat'l Bank & Tr. Co. of Baytown*, 593 F.2d 598, 604 (5th Cir. 1979). The text, structure, and general principles of the CISG, informed by analysis of similar UCC provisions, all militate against a finding that "loss" in article 74 includes attorney's fees.

Finally, concluding that article 74 does not authorize an award of attorney's fees will not "[dis]regard" the CISG's "international character and . . . the need to promote uniformity in its application and the observance of good faith in international trade." *See* CISG, art. 7(1). The majority rule applied by United States district courts is that "attorneys' fees are not a recoverable 'loss' under CISG Article 74," based on the Seventh Circuit's holding in *Zapata*. *Victory Foodservice Distribs. Corp. v. N. Chr. Laitsos & Co.*, 2017 WL 5256762, at *2 (S.D.N.Y. Nov. 13, 2017) (collecting cases). And although courts from jurisdictions that follow the

"loser pays" English rule routinely award attorney's fees in CISG actions, most either fail to indicate the source of law on which they are relying or expressly rely on domestic law. *See UNICTRAL Digest of Case Law on the United Nations Convention on Contracts for the International Sale of Goods*, U.N. Comm'n on Int'l Trade Law, ch. V, pt. III, § 2 (2016). Even German courts, some of the strongest adherents to the view that attorney's fees constitute "loss" for purposes of article 74, are reluctant to award litigation costs as a contractual "loss." *See* Faculty of Law of the University of Basel (Switzerland), CISG-online, "Attorneys' fees," https://cisg-online.org/cisg-article-by-article/part-3/art.-74-cisg/loss-by-category-of-loss/attorneys-fees. Instead, they often award only pre-litigation costs, a distinction important in German law but not found in article 74. *See id.* Indeed, "[t]here are more than 2,500 cases from 45 jurisdictions available at the Pace University database on CISG . . . . Yet, less than 10 (0[.]4%) invoke CISG as the applicable law for the issue of recovery of attorneys' fees." Milena Djordjevic, *"Mexican Revolution" in CISG Jurisprudence and Case-Law: Attorneys' Fees as (Non)Recoverable Loss for Breach of Contract*, in Private Law Reform in South East Europe: Liber Amorcorum Christa Jessel-Holst at 199, 213 & n.51 (Mirko S. Vasiljevic, Rainer Kulms, Tatjana Josipovic & Maja Stanivukovic eds., 2010). Our interpretation of article 74 will not disturb "uniformity in [the CISG's] application."

Because CISG article 74 does not authorize an award of attorney's fees, the district court erred in awarding those fees to Brands.

### III.

For the foregoing reasons, we affirm the district court's grant of summary judgment to Brands but reverse the award of attorney's fees.

_____